**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JODY EDWIN GRIFFITH** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **2:07-CV-749-MEF** |
| **GARY ANDERSON, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## SPECIAL REPORT

COME NOW the Defendants, **Gary Anderson** and **Anthony Peterson**, by and through undersigned counsel, and in accordance with this Honorable Court's September 7, 2007 Order, offer the following written report:

## PARTIES

1. The Plaintiff, Jody Edwin Griffith, is an inmate of the Alabama Prison System. Plaintiff is currently serving a 35 year sentence for murder.

2. Defendant Gary Anderson is a Correctional Officer at Kilby Correctional Facility in Mt. Meigs, Alabama.

3. Defendant Anthony Peterson is a Correctional Officer at Kilby Correctional Facility in Mt. Meigs, Alabama.

4. Plaintiff has alleged other fictitious parties which is not allowed under the Federal Rules of Civil Procedure.

## EXHIBITS

EXHIBIT 1 – Affidavit of Gary Anderson

EXHIBIT 2 – Affidavit of Anthony Peterson

EXHIBIT 3 – Incident Report, Body Charts and Investigation Statements

## PLAINTIFF'S CLAIMS

Plaintiff claims that he was beaten by Officer Anderson while in the showers of the segregation unit at Kilby Correctional Facility.  Plaintiff claims that Officer Peterson provided Officer Anderson with a fiberglass baton but does not allege that Officer Peterson assisted in beating Plaintiff nor does he allege that Officer Peterson was in a position to prevent any alleged use of excessive force.  Plaintiff vaguely alleges that both Officers denied him access to medical attention following the incident.  Plaintiff demands compensatory damages, punitive damages and injunctive relief.

## DEFENDANTS' RESPONSE

1.      The Defendants deny that they violated the Plaintiff's constitutional rights.

2.      The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.      The Plaintiff has failed to state a claim upon which relief may be granted.

4.      The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.      The Defendants are immune from suit due to qualified immunity.

## STATEMENT OF FACTS

At about 4:35 pm on November 23, 2006, Officer Anderson was conducting showers on A, B, and C Block shower area. Exhibit 1.  Officer Peterson was on D Block. Exhibit 2.   Plaintiff was sent to the showers by Officer Peterson.   Exhibit 1.   After removing another prisoner from the showers, Officer Anderson instructed Plaintiff to enter. Exhibit 1. Plaintiff was joking and talking so Officer Anderson ordered Plaintiff to step back to the door so his handcuffs could be removed. Exhibit 1. Plaintiff continued to joke and talk rather than comply with the orders given him saying, "It's my shower and bath time which is my time." Exhibit 1. Officer Anderson informed Plaintiff that shower time was for showering and that if he did not want to shower, he could go back to his cell. Exhibit 1. Plaintiff stood in place, so Officer Anderson turned off the shower and instructed Plaintiff once again to come to the gate so he could remove him from the shower. Exhibit 1.  Plaintiff again refused this direct order. Exhibit 1. Officer Anderson opened the door to the showers and gave plaintiff a final order to exit the shower cell. Plaintiff again refused to comply. Exhibit 1.

Because Plaintiff had at this point refused to comply with Officer Anderson's direct orders, Officer Anderson walked over, placed his right hand on Plaintiff's left bicep and began to escort him out of the shower. Exhibit 1. Plaintiff jerked away and stated, "Don't put your goddamn hands on me."  Exhibit 1. Officer Anderson reapplied the hold on Plaintiffs left bicep and tugged Plaintiff with more force to remove him from the shower cell.  Exhibit 1. At this point, Plaintiff began to drag his feet and did not step over the 18 inch ledge of the shower that prevents water from running out of the shower. Exhibit 1.  Plaintiff fell from Officer Anderson's grasp and hit the concrete floor.  Exhibit

1.  Officer Anderson helped Plaintiff to his feet, escorted him up the stairs, removed his handcuffs and ordered him back to his cell. Exhibit 1.  Officer Anderson returned to the shower area to complete his duties. Exhibit 1.  Officer Peterson did not witness the incident nor did he provide Officer Anderson with a baton as alleged by Plaintiff.  At no time did Plaintiff inform Officer Peterson of the incident.  Exhibit 2.

At approximately 5:06 pm, Officer Anderson informed Sgt. Alan Smith of the incident.  Exhibit 1. Officer Anderson informed Sgt. Smith that he would be writing a disciplinary report for failure to obey orders and requested that Plaintiff be taken to the infirmary for a body chart. Exhibit 1. Sgt. Smith agreed and ordered Officer Tericus Dinkins to take Plaintiff to have a body chart done.  Exhibit 1.

Plaintiff had a first body chart done around 6:10 that same day.  Exhibit 3.  The nurse who performed the initial body chart stated that Plaintiff was uncooperative and verbally disrespectful to him and only complained of a minor injury to his wrist.  Exhibit 3. That was therefore the only injury noted on the initial body chart.  Exhibit 3. Later that evening, plaintiff complained to Sgt. Smith that other injuries were not noted on the original body chart and asked that a second chart be done.  Exhibit 3.  At approximately 9:25 pm that same day, a second body chart was performed and a few other minor injuries were noted.  Exhibit 3.

## ARGUMENT

### Summary Judgment Standard

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the

non-moving party and must draw all reasonable inferences against the moving party.
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving
party to establish his prima facie entitlement to summary judgment by showing the
absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark &*
*Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried,
however, the non-moving party may not merely rest upon his pleading, but must come
forward with evidence supporting each essential element of his claim.  *See Celotex Corp*
*v. Catrett*, 477 U.S. 317 (1986);  *Anderson v. Liberty Lobby, Inc.*,  477 U.S. 242 (1986);
*Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the Plaintiff, who carries the
ultimate burden of proving his action, is able to show some evidence with respect to each
element of his claim, all other issues of facts become immaterial and the moving party is
entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317
(1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has
explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails
> to establish a prima facie case.  "In such a situation, there can be
> 'no genuine issue as to any material fact,' since a complete failure
> of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial." [Citation
> omitted].  Thus, under such circumstances, the public official is
> entitled to judgment as a matter of law, because the plaintiff has
> failed to carry the burden of proof.   This rule facilitates the
> dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

### "Heightened Pleading" requirement

There is a "heightened pleading" requirement for section 1983 claims, especially those
for which qualified immunity is raised as a defense. See *Gonzalez v. Reno*, 325 F.3d 1228, 1235
(11th Cir. 2003). As the Eleventh Circuit has held, "[i]n civil rights and conspiracy actions, . . .

more than mere conclusory notice pleading is required" and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Thus, in reviewing a motion to dismiss in a section 1983 case, a court "need only accept 'well-pleaded facts' and 'reasonable inferences drawn from those facts.'" *Gonzalez*, 325 F.3d at 1235 (quoting *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir. 1992)). "'[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'" 325 F.3d at 1235 (quoting *Marsh v. Butler County,* 268 F.3d 1014, (11th Cir. 2001)). Moreover, the courts "'generally accord . . . official conduct a presumption of legitimacy.'" 325 F.3d at 1235 (quoting *United States Dep't of State v. Ray,* 502 U.S. 164, 179 (1991)). The Plaintiff's claims against these defendants do not meet this heightened standard and should therefore be dismissed.

### Defendants did not use excessive force against plaintiff.

Claims of excessive force against inmates are governed by the Eighth Amendment's proscription of cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To establish an Eighth Amendment claim of excessive force, the plaintiff must prove that "'force was applied … maliciously and sadistically for the very purpose of causing harm.'" *Id., quoting Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.E.2d 251 (1986). The "core judicial inquiry" in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed. 2d 156 (1992).

In addition to defining the mental state required, *Hudson* and *Whitley* outline five distinct factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) "the extent of the injury"; (2) "the need for application of force";

(3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell*, 169 F. 3d at 1375; citing *Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 7.

Applying these five factors to the incident involving Plaintiff and Officer Anderson, it is clear that Officer Anderson did not use excessive force against Plaintiff. There was clearly a need for the application of some force when Plaintiff failed to follow Officer Anderson's orders and fought with Officer Anderson. Officer Anderson was required to apply force to maintain discipline and divert any further harm to himself, Plaintiff, or others. Officer Anderson used only that amount of force necessary to subdue Plaintiff and restore discipline, thus preventing the likelihood of further harm.

To state a valid excessive force claim, an inmate's injuries need not be significant, but must be more than *de minimis*. *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.); modified in part by *Harris v. Garner*, 216 F. 3d 970 (2000). Plaintiff's Complaint alleges no injury upon which he can base a valid excessive force claim.

The Eleventh Circuit follows a two part test to determine whether a plaintiff has established a valid excessive force claim. *Lanier v. Fralic*, No. Civ.A.98-0923AHL, 2000 WL 1844679 *4 (11th Cir. 2000). The test has an objective and subjective component. <u>Id</u>. Plaintiff's excessive force claim cannot be maintained unless he establishes:

1.   That he suffered injury that was objectively harmful enough to establish a constitutional violation, and

2.    That subjectively, defendant acted maliciously or sadistically to cause the plaintiff harm.

The Eleventh Circuit has observed that injuries resulting from similar usage of force alleged by Plaintiff are too minor to support the objective prong of the excessive force test. *Lanier* at *5 n.5. (citing as *de minimis* injuries: *Markiewicz v. Washington*, 1999 WL 196596 (7th Cir.1999) (a bruised shoulder from being shoved into a wall); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997) (a sore, bruised ear lasting three days); *Williams v. Dehay*, 1996 WL 128422 (4th Cir.1996) (transitory back and shoulder aches of limited duration); *Schoka v. Swinney*, 1995 WL 251126 (9th Cir.1995) (a 1.5 inch scratch on the back of the hand from handcuffs); *Riley v. Dotson*, 115 F.3d 1159 (4th Cir.1997) (a welt from a slap on the face); *Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir.1994) (daily headaches without treatment from being hit with a water bucket); *Norman v. Taylor*, 25 F.3d 1259 (4th Cir.1994) (A sore and swollen thumb from being hit with keys)). See also *Santiago v. Semenza*, 965 F. Supp. 468, 472 (S.D.N.Y. 1997) (holding that an officer's striking an insubordinate prisoner in the face causing bruising was not excessive force). Plaintiff's allegations of injuries are *de minimis* at best, and his excessive force claim fails and Officer Freeman is entitled to summary judgment.

### Plaintiff was not denied adequate medical attention

It is well-settled that to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. *See Estelle v. Gamble,* 97 S.Ct. 285, 292 (1976). That is, a prisoner must show his inadequate care arose from a "deliberate indifference to [his] serious medical needs." *Id.* at 291. This standard encompasses both objective and subjective components.

First, the prisoner must prove an objectively serious medical need, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.2003) (quotation and citation omitted). Second, the prisoner must show the prison official acted with deliberate indifference to that need. To establish the requisite deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of a serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004). Put generally, deliberate indifference is medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986). "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown,* 117 S.Ct. 1382, 1391 (1997). *See also Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995).

There is simply no evidence that can serve as a basis for Plaintiff's complaints of denial of medical attention. Plaintiff has made no allegations that he was ever subjected to a serious risk of harm, much less that either of these Defendants possessed sufficient subjective knowledge of such a serious risk and with deliberate indifference consciously chose to disregard such a serious risk. Plaintiff has failed to provide, and cannot provide, the court with sufficient facts to raise his complaint to the level of an even arguable constitutional violation.

**The Defendants are immune from suit.**

This case should also be dismissed because the Defendants are immune from suit. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment therefore not only bars suits against a state by citizens of another state, but also bars suits against a state by that state's own citizenry. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974) and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit against the State; thus, the Defendants should be dismissed based on immunity.

In addition, the Defendants are protected by qualified immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)).

*Wilson, supra* (holding that the marshal, wardens, and corrections officer were protected by qualified immunity); *see also Pinkney v. Davis*, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity). The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Wilson*, 163 F.3d at 1295, *quoting Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878 (1979). The Defendants have not violated Plaintiff's clearly established rights; thus, they are entitled to qualified immunity.

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law. WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General


*/s/ Benjamin H. Albritton*
Benjamin H. Albritton (ASB-0993-R67B)
Assistant Attorney General


ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this the 16th day of October, 2007, served a copy of

the foregoing upon the Plaintiff by placing same in the United States Mail, postage

prepaid and properly addressed as follows:

Jody Edwin Griffith, AIS 249169
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL  35749


                              */s/ Benjamin H. Albritton*
                              Benjamin H. Albritton
                              Assistant Attorney General

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLBE DISTRICT OF ALABAMA
## NOTHERN DIVISION

| | | |
|---|---|---|
| Jody Edwin Griffith, | ) | |
| #249 169 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS | ) | 2:07-CV-749-MEF |
| | ) | |
| Gary Anderson, et al., | ) | |
| | ) | |
| Defendants | ) | |

DEFENDANT'S
EXHIBIT
1

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Gary Anderson, CO who being know to me and being by me first duly sworn, deposes and says on oath as follow:

My name is Gary Anderson, and I am presently employed as a Correctional Officer with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

I have received a complaint concerning inmate Jody Griffith, W/M 249169, on or about September 17, 2007. On November 23, 2006, at approximately 4:35pm, I was conducting showers on A, B, and C Block shower area. Inmate Griffith was sent to the showers by CO Anthony Peterson. After removing one inmate from the shower and sending him back to CO Peterson, I placed inmate Griffith in the C-

Block shower. Inmate Griffith walked away from the shower door and continued talking and joking. I ordered inmate Griffith to step back to the door to remove the handcuffs so that he could began showering. Inmate Griffith replied, "It's my shower and bath time, which is my time." I instructed inmate Griffith that shower time is for showering or he could go back to his cell. Inmate Griffith stood in place and I turned off the shower, to preserve hot water. I gave another direct order to come to the gate in order to remove the inmate from the shower cell. Inmate Griffith remained in place and I opened the shower cell door and gave a final order to exit the shower. While inmate Griffith remained in place, I walked over to him and placed my right hand around inmate Griffith's left bicep and began to escort him out of the shower cell. Inmate Griffith resisted, by jerking away and saying, "Don't put you God damn hands on me." I re-established the hold on inmate Griffith's left bicep with more pressure and tugged at inmate Griffith to remove him from the shower cell. Just as inmate Griffith was being removed from the shower cell, he did not step over the ledge of the shower, which stands about eighteen inches above the floor to prevent water from running over onto the floor. Inmate Griffith dragged his feet and fell from my grasp and hit the concrete floor sliding forward. I assisted inmate Griffith to his feet, by his arms, and escorted him to the top of the stairs, removed his handcuffs and instructed him to return to his assigned cell. I returned to the A, B, & C Block shower areas and completed the rest of the showers at approximately 5:06pm and then informed Sgt. Alan Smith of the incident. I also informed Sgt. Smith of the write up for disobeying a direct order that inmate Griffith would receive. CO Anderson asked Sgt. Smith to get inmate Griffith a body chart so that self inflicted wounds would not appear days later with other accusations to follow. Sgt. Smith approved the request and sent CO Tericus Dinkins to get the body chart done on inmate Griffith. I have no knowledge of any further interactions involving inmate Griffith.

For the statement dated November 23, 2006, I was given a direct order by Sgt. Smith to re-write the above statement to include CO Peterson, so that both officers would be at the shower cell and the inmate's assigned cell. By following Sgt. Smith's orders, I later received a fifteen day suspension without pay when CO Peterson advised the Captain of his true position on D-Block which I confirmed when asked by the Captain. I deny that I have violated inmate Griffith's civil or constitutional rights.

_Gary Ander.  CO1_

**CO Gary Anderson**
**Kilby Correctional Facility**


**State of Alabama**
**Montgomery County**

**Sworn to and subscribed before me and under my hand and official seal
this 27 day of September , 2007.**


_Betty S Carr_

**Notary Public**
**My comm. Expires 12-17-09**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**DEFENDANT'S EXHIBIT**
D

JODY EDWIN GRIFFITH, 249169
  Plaintiff,

VS.                                    CIVIL ACTION NO. 2:07-CV-749-MEF

OFFICER GARY ANDERSON, et al.
  Defendants.

A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Anthony Peterson who, being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Anthony Peterson. I am presently employed as a Correctional Officer with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen years of age. I have reviewed the Plaintiff's allegations and I deny that I have violated any of inmate Griffith's rights. I further certify and affirm that on November 23, 2006, I, CO Anthony Peterson was assigned to the Segregation Unit. I CO Peterson was working upstairs on D-Block and I have no knowledge of the allegation that Jody Edwin Griffith, 249169, alleged happen on C-Block. At no time did Jody Edwin Griffith, 249169, reported or informed CO Peterson about an incident with CO Gary Anderson. At no time, did Jody Edwin Griffith, 249169, asked CO Anthony Peterson if Jody Edwin Griffith could speak with the Shift Commander or go to the infirmary. On November 23, 2006, CO Anthony Peterson did not supply CO Gary Anderson with a baton. All Officers that are assign to work segregation, are allow to have a baton working on the Block in segregation. Jody E. Griffith did not talk about a baton in his original statement.

CO Anthony Peterson
Kilby Correctional Facility

STATE OF ALABAMA      )
MONTGOMERY COUNTY  )

SWORN TO AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND THIS THE 9th DAY OF October, 2007.

Betty S. Carr,   NOTARY PUBLIC
My Commission Expires 12/17/09

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**DEFENDANT'S EXHIBIT**
**3**

# INCIDENT REPORT

*X.B.*

| 1. Institution: | 2. Date: | 3. Time: | 4. Incident Number: | Class Code: |
|---|---|---|---|---|
| **Kilby Correctional Facility** | **11/23/2006** | **5:06PM** | *KCF ~ 1062* | *B* |

| 5. Location Where Incident Occurred: | 6. Type of Incident: **(Use of Force)** |
|---|---|
| **Segregation Unit** | **#56 Failure to obey a direct order** |

| 7. Time Incident Reported: | 8. Who Received Report: |
|---|---|
| **9:00PM** | **Capt. Leon Bolling** |

| 9. Victims: | Name | | No. | AIS |
|---|---|---|---|---|
| a. | N/A | | No. | |
| b. | | | No. | |
| c. | | | No. | |

| 10. Suspects: | Name | | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|---|
| a. | Griffith, Jody | No. | W/M 249169 | | a. | Christopher Jordan | No. | W/M 161847 |
| b. | | No. | | | b. | Anthony Peterson | No. | COI |
| c. | | No. | | | c. | Gary Anderson | No. | COI |
| d. | | No. | | | d. | John Callens | No. | COI |
| e. | | No. | | | e. | | No. | |
| | | | | | f. | | No. | |
| | | | | | g. | | No. | |

**PHYSICAL EVIDENCE:**

**12. Type of Evidence**

n/a

**13. Description of Evidence:**

n/a

**14. Chain of Evidence:**

a   n/a
b
c
d
e

**15. Narrative Summary:**

On 11/23/06 at approximately 5:06pm Officer Gary Anderson notified Sgt. Allan Smith that at approximately 4:38pm while conducting showering of Segregation inmates, he (Officer Anderson) had removed an uncooperative inmate out of the shower on C-Block, and while doing so the inmate had tripped over the shower threshold and fell scratching his ankle. Officer Anderson informed Sgt. Smith that he (Officer Anderson) was going to write the inmate a behavior citation for Failure to Obey a Direct order. Sgt. Smith informed Officer Anderson that a body chart was needed on the inmate. Officer Anderson stated that the inmate Jody Griffith W/M 249169 after being place into the Shower in C-Block walked away from the shower gate while still wearing handcuffs, talking and making jokes. Officer Anderson ordered inmate Griffith to back up to the shower gate so he (Officer Anderson) could remove the handcuffs from inmate Griffth. After removing the handcuffs inmate Griffith stood under the shower and continued to talk. Officer Anderson ordered inmate Griffith to stop talking and to take his (inmate Griffith's) shower. Inmate Griffith then stated to Officer Anderson "It's my shower and bath time which is my time". Officer Anderson instructed inmate Griffith that "Shower time was for showering, or you (inmate Griffith) could go back to your (inmate Griffith's) cell. Inmate Griffith still just stood there not showering.

Distribution:    ORIGINAL AND ONE (1) COPY to Central I & I Division        COPY to Deputy Commissioner of Operations (Class A and B ONLY)
                 COPY to Institutional File                                 COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution:<br>Kilby Correctional Facility | Incident Number:<br>KCf-1062 | Class Code:<br>B |
|---|---|---|
| Date:<br>11/23/06 | Type of Incident:<br>#56 Failure to Obey a Direct Order | |

Narrative Summary (Continued) Page No. Officer Anderson ordered inmate Griffith to back up to the shower gate. Inmate Griffith refused to comply with the order by standing there with his (inmate Griffith's) arms crossed over his (inmate Griffth's) chest. Officer Anderson then advised Officer Anthony Peterson that he (Officer Anderson) was opening the shower gate. Officer Anderson then opened the shower gate and entered the shower with Officer Peterson following to remove inmate Griffith from the shower. Officer Anderson attempted to secure inmate Griffith's right arm when inmate Griffith jerked away from Officer Anderson, and stated "Get your god damn hands off me". Inmate Griffith then slipped on the wet floor and fell to the floor. Officer Anderson secured inmate Griffith's hands behind his (inmate Griffith's) back, by placing handcuffs around inmate Griffith's wrist. Officers Anderson And Peterson then escorted inmate Griffith back to his (inmate Griffith's) assigned cell, D-4. Officers Anderson and Peterson then continued to shower the rest of the inmates assigned to the Segregation Unit. At approximately 6:15 Officer Tericus Dinkins escorted inmate Griffith to West Ward to receive a Body chart. At approximately 6:20pm inmate Griffith was treated and released by Herbert Leverette LPN. and Alfreda Dulaney LPN (see attached medical report).Sgt. Smith received inmate Griffith's medical report showing only a small abrasion to the left wrist of inmate Griffith. At approximately 8:30pm Officer Dinkins informed Sgt. Smith that inmate Griffith wanted to speak with me (Sgt. Smith). At approximately 8:35pm Sgt. Smith entered the Segregation Unit and spoke with inmate Griffith. Inmate Griffith stated that he (inmate Griffith) had been assaulted for no reason by one of the Segregation officers. Inmate Griffith stated he had been a Correctional Officer for ten years at St. Clair Correctional Center. Inmate Griffith began showing me (Sgt. Smith) injuries to his (inmate Griffith's) body that he (inmate Griffith) received during the altercation that was not noted on the medical report conducted on him (Inmate Griffth) earlier. Sgt. Smith asked inmate Griffith if there were any witnesses to the incident. Inmate Griffith stated that Christopher Jordan W/M 161847 in D-3 had witnessed it all. Sgt. Smith then questioned inmate Jordan concerning the incident. Sgt. Smith instructed Officers Anderson and Peterson to write statements and to provide inmates Griffith and Jordan with paper and a pen and to instruct them (inmates Griffith and Jordan) to also write their statements concerning the incident (see attached statements). At approximately 9:00pm Sgt. Smith notified the ON-Call Supervisor (Capt. Leon Bolling) via telephone and advised him (Capt. Bolling) about the incident. At approximately 9:10pm Sgt. Smith had LPN Leverette report to the Shift Office and questioned him (LPN Leverette) about the additional injuries that inmate Griffith had that were not noted on the first medical report. LPN Leverette stated that inmate Griffith was uncooperative and verbally disrespectful towards him (LPN Leveratt). LPN Leveratt stated that when inmate Griffith was asked where was he (inmate Griffith) hurt, all that inmate Griffith showed LPN Leverette was his (inmate Griffith's) wrist. Sgt. Smith instructed LPN Leveratt to conduct another Body Chart on inmate Griffith. At approximately 9:40pm Sgt. Smith instructed Officer Krammer Penn to escort inmate Griffith to the Segregation office where inmate Griffith received another Body Chart conducted by LPN Leverette. (see attached medical report). Inmate Griffith remains in the Segregation Unit pending disciplinary action for rule violation #56 Failure to Obey a Direct Order. Sgt. Smith believes that this incident should be forwarded to I&I for further investigation, due to the proper protocol not being followed when dealing with an uncooperative inmate in a cell and also because of inmate Griffith's allegations. No further action was taken at this time.

Sgt. Allan Smith

## S-T-A-T-E-M-E-N-T

On November 23, 2006, at approximately 4:38 p.m., COI's Gary Anderson and Anthony Peterson placed inmate Jody Griffith W/249169 in the shower in the Segregation Unit. Inmate Griffith walked away from the shower door and began talking and joking. COI Anderson asked inmate Griffith to step back to the door to remove the handcuffs so he (Griffith) can began to shower. Inmate Griffith replied, "It's my shower and bath time which is my time". COI Anderson instructed inmate Griffith that shower time is for showering or he (Griffith) could go back to his cell. Inmate Griffith stood in place and COI Anderson turned the water off. COI Anderson gave another direct order to inmate Griffith to come to the gate. COI Anderson advised COI Peterson that I (Anderson) was opening the gate. COI Anderson and Peterson attempted to escort inmate Griffith who resisted by jerking away saying, "Don't put your god damn hands on me," At that time inmate Griffith fell to the floor. Grabbing him (Griffith) again by his arms, COI's Anderson and Peterson escorted inmate Griffith back to his assigned cell. At 5:06 p.m., COI Anderson advised Sgt. Allan Smith of the incident.

COI Gary Anderson

On November 23, 2006, at approximately 2:00 pm, Officer John Callens
assumed duties as North Control Officer. At approximately 4:30 pm, Officer
Callens assisted Officer Gary Anderson, and Officer Anthony Peterson in
conducting "D" Block showers. At approximately 4:45 pm, while observing
Officer Peterson on "D" Block, Officer Callens heard Officer Anderson
giving an Inmate several orders to exit the shower on "C" Block. Officer
Callens did not witness any further action.

Officer John Callens



KCF 1062 B

# EMERGENCY

| ADMISSION DATE 11/23/06 | TIME 6:10 AM | ORIGINATING FACILITY KCF ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT |
| --- | --- | --- | --- |

| ALLERGIES NKA | | CONDITION ON ADMISSION O2 Sat 98% ☐ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |
| --- | --- | --- |

| VITAL SIGNS: TEMP 98.6 | ORAL RECTAL | RESP. 20 | PULSE 103 | B/P 142/90 | RECHECK IF SYSTOLIC <100> 50 |

| NATURE OF INJURY OR ILLNESS | | ABRASION /// | CONTUSION # | BURN XX / XX | FRACTURE Z / Z | LACERATION / _____ / SUTURES |
| --- | --- | --- | --- | --- | --- | --- |

Body Chart for DOC

3- "I was assaulted by a DOC officer".



PROFILE RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O- Alert & Oriented to person, place, and time.
Resp. with ease. Skin warm, dry, and intact.
Small abrasion to left wrist, no bruises, no
cuts, no distress noted.

A- body chart per ADOC

P- Release to ADOC



####### +#

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
| --- | --- | --- |

DIAGNOSIS

INSTRUCTIONS TO PATIENT

| DISCHARGE DATE 11/23/06 | TIME 6:20 AM | ☐RELEASE ☐ TRANSFERRED TO ☐ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
| --- | --- | --- | --- |
| NURSE'S SIGNATURE D. Guerra RN | DATE 11/23/06 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
| --- | --- | --- | --- | --- |

  

KU 1062 D

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY Kilby | |
|---|---|---|---|
| 11 /23 /06 | 9:25 AM PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT |

ALLERGIES NKA

CONDITION ON ADMISSION: ☑ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

VITAL SIGNS: TEMP 99.3 ORAL RECTAL RESP. 20 PULSE 96 B/P 140/76 RECHECK IF SYSTOLIC <100> 50

NATURE OF INJURY OR ILLNESS

S- 2nd body per ADOC

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / SUTURES |

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

PHYSICAL EXAMINATION

O- Alert and oriented to person, place, and time. Resp. with ease. Skin warm, dry, and intact. only mm On second exam minor abrasion noted with no bleeding noted as follows. <1cm on 3rd toe Left foot, Left posterior thigh 5cm bruise, 4 cm bruise left lateral hip, 3cm bruise left anterior hip, 3cm bruise left lateral shoulder, 5.5cm abrasion left interior forearm. small abrasion left wrist, <1cm abrasion left lateral head, <1cm superior left eybrow, no distress noted

DIAGNOSIS A- body chart per ADOC

INSTRUCTIONS TO PATIENT P- Release to ADOC

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |

| DISCHARGE DATE 11/23/06 | TIME 9:40 AM PM | RELEASE / TRANSFERRED TO ☑ ADOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
| NURSES SIGNATURE | DATE 11/23/06 | PHYSICIAN'S SIGNATURE DATE | CONSULTATION |

INMATE NAME (LAST, FIRST, MIDDLE)

| DOC# | DOB | R/S | FAC. |

Statement by Judy L Griffith/M244167                    P. 1 of 2

On November 23, 2006 during Second Shift I was placed
in handcuff and directed to the shower area.

Upon arriving at the shower area on the bottom tier of
the Seg unit I was ordered by Ofc Williams to enter the
shower allong with Inmate Chris Jordan 4/m 161847 (both of us ar P.C.)

After approx. (3) three minites Officer Williams, stated "You can't
talk and shower at the same time."

I stated "I am showering", and placed my head back under the water
Ofc Williams stated, "Waldo get your ass out of the shower."

I said "let me finish" and walked to the corner of the shower
and began drying off.

Ofc Williams had left the area and returned when I had my
towel in my hand drying off. Inmate Jordan was still showering
Ofc Williams slammed the door open on me while I was drying
off. Hit me in the leg with his baton and said, "I told
you to get the Fuck out of the shower!" He then grabed me or
hit me but all I remember was lying on the floor with Ofc Williams
king me with his baton stating "Take your ass back to your cell!"
Inmates were standing around the area. (At the time I was neither in
handcuffs or legirons)

Ofc Williams istructed another inmate to "Through his fucking slide
of the shower to him." Ofc. Williams continued yelling at me to
to my cell. I told him that I was "hurt real bad and need to go
the infirmary." Ofc Williams stated "Take your ass to your cell or I'll beat it again."

After a few minutes of laying on the floor I was barely able
stand and limp up a few steps where I fell again. I told Ofc Williams

Continuation of Statement by Jody L. Griffith W/m 249169          2 of 2
11-23-06

I was finally able to limp to my cell where I informed other officers in the unit as they came by.

After 40min — 1hr — Ofc. Dinkins came and escorted me to the infirmary. A bodychart was conducted...

I informed Ofc. Dinkins on the way back to the unit that I wanted to talk to a supervisor. because I felt that the bodychart is insuficient (As I looked at the bodychart I seen no documentation my injuries)

Later Sgt. Smith came to my cell where I explained the incident and showed him my injuries. I told him what was said the infirmary. I told him that I wanted to talk to I&I and was willing to take a polygraph test. I asked him if the bodychart reflected my injuries.

At approx 9:10p — a officer came and told me to write a statement. I was then escorted out of my cell and given another bodychart. (The nurse documented all my injuries on a piece of paper.

Sgt. Smith assured me that the On-call Official was notified & I was escorted back to my cell. Jody Griffith W/m 249169

End of Statement

I AND DODY GRIFFITH WERE IN THE SHOWER AT THE SAME TIME. THE OFFICER RUNNING THE TOWER, ~~TOLD~~ ASKED DODY WHO WAS TALKING TO QUIT TALKING. HE TOLD DODY TO GRAB HIS SHIT, AND GET OUT. DODY WAS DRYING OFF WHEN THE OFFICER CUT OFF THE SHOWER AND THREW THE DOOR OPEN. THE DOOR SLAMMED INTO DODY. THE DOOR HIT HIM ON THE SIDE AND THE HEAD. THE OFFICER STEPPED INTO THE SHOWER HITTING HIM IN THE LEG WITH HIS STICK. GRABBED HIM BY THE BACK OF THE NECK, AND THREW HIM DOWN. SLAMMING HIM DOWN ON HIS FACE. I WAS THEN ORDERED TO GET OUT. COOPERATING, I DID WHAT I WAS TOLD, AND RETURNED TO MY CELL.


WITNESS:
CHRISTOPHER Q. JORDAN
161847    03

KCF 06 - 1068

## S-T-A-T-E-M-E-N-T

At approximately 4:15 p.m., on November 23, 2006, I, COI Anthony Peterson was on D-Block conducting showers. I, (COI Peterson) did not witness the altercation between COI Gary Anderson and inmate Jody Griffith w/249169 that occurred on C-Block of the Segregation Unit.

_____
**COI ANTHONY PETERSON**