IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Jody Edwin Griffith,

    plaintiff,

vs.                       Case Number: 2:07-CV-749-MEF

Gary Anderson, et al.,

    defendants.

---

## PLAINTIFF'S MOTION IN OPPOSITION TO SUMMARY JUDGMENT

---

Comes now, Jody Griffith, plaintiff, pro se, in the above-styled cause, and respectfully submits the following motion in opposition to the defendants' motion for summary judgment dated October 16, 2007[1]. Plaintiff filed suit under §1983 arguing that the Defendants violated his constitutional rights while acting under color of law; Defendants Anderson and Peterson have moved for summary judgment. The defendants' motion is due to be denied for the following reasons:

---

[1] It appears defendants Anderson and Peterson have moved for summary judgment (Special Report p. 4), despite being specifically ordered not to do so by this court (Document 5-1, ¶3). In the event this court might entertain such a motion, the Plaintiff files this responsive pleading to rebut the Defendants' motion and argument.

1

SCANNED

1. **THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT FOR THE DEFENDANTS**

Summary judgment is to be granted only if the record before the court shows "that there is no genuine issue of material fact and that the moving party is entitled to the judgment as a matter of law". <u>Rule 56(c)</u>, Fed.R.Civ.P. A "material" fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Tipton v. Bergrohr*, 965 F.2d 994, 998 (11th Cir 1992). If reasonable minds could differ on the inferences arising from disputed facts, then a court must deny summary judgment. *Miranda v. B & B Cash Grocery, Inc.*, 975 F 2d 1518, 1534 (11th Cir 1992)(citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F 2d 838, 841 (11th Cir 1985)).

<u>Factual Issues in Dispute</u>

In the present case, the affidavits of the plaintiff and the defendants are squarely contradictory as to what transpired during the incident in question, what force was used, how it was used, and why it was used. The statements contained within plaintiff's affidavit portray a completely senseless use of force against an inmate at his most vulnerable -- while he was naked and wet in the shower --

but the Defendants claim that the inmate merely "slipped and fell". These conflicting accounts give rise to numerous factual disputes that need to be resolved by a jury.

Officers Anderson and Peterson maintain that their actions did not violate Plaintiff's constitutional and civil rights, claiming instead that the Plaintiff disobeyed a direct order to get out of the shower and then resisted forceful removal (Answer p.7). In contrast, the Plaintiff asserts that he was struck with a steel door, then hit with a baton, shoved to the ground, and knocked unconscious (Griffith Affidavit), but the Defendants deny any of this ever happened. In attempting to create a plausible narrative, the Defendants claim that Plaintiff tripped over a ledge and fell to the floor (Anderson Affidavit, Defendant's Exhibit A).

In addition to the sworn affidavits of the Plaintiff and the Defendants, the Plaintiff also relies on numerous documents and exhibits obtained through discovery which corroborate Plaintiff's version of events, including the following: an internal investigative I & I Report concluding that Defendant Anderson indeed assaulted Plaintiff and gave a false statement to conceal the assault; a written and oral statement from eyewitness Christopher Jordan supporting Plaintiff's position; 2 separate body charts itemizing the

3

13 different injuries to Plaintiff's body; 9 of the 17 photographs showing these injuries; an Incident Report documenting the altercation; and various other statements from prison personnel proving that Plaintiff did not receive prompt medical attention for his injuries[2].

Whether any use of force at all was necessary is also in dispute: the Plaintiff asserts that he was complying with the orders that he was given and never resisted in any way (Griffith Affidavit p.2), but the Defendants state the use of force was required to remove Plaintiff from the shower (Answer p.7). Whether or not Plaintiff was handcuffed at the time of the incident is also in dispute; the Plaintiff's affidavits assert that he was not handcuffed (Griffith Affidavit p. 2), but Defendant Anderson's affidavit claims that Plaintiff's handcuffs were never removed (Anderson Affidavit p.2, Defendant's Answer, Exhibit 1). Griffith also states that Officer Anderson, without warning, entered the shower and struck him with a baton (Griffith Affidavit p. 2), but Officer Anderson never mentions the baton at all (Anderson Affidavit p.2).

Additionally, the Plaintiff has now executed a second rebuttal affidavit, filed along with this motion,

---

[2]These documents are certified by the ADOC as "certified copies of the records generated as a result of the investigation of this incident", and should be admissible under general rules of evidence. Plaintiff moves to enter them into the record as part of the evidence before this court.

specifically refuting numerous statements contained within the defendants' affidavits (attached 'Exhibit A'). The Plaintiff's second affidavit should also be considered by this court as additional evidence proving the Defendants are not entitled to summary judgment. It raises additional controversies in dispute and shows other genuine issues of material fact.

### Genuine Issues of Material Fact

The evidence currently before this court demonstrates the need for a jury to be empanelled to determine the following genuine issues of material fact:

1. Whether Griffith refused to obey a direct order from Officer Anderson to be handcuffed (or un-handcuffed)?

2. Whether Griffith refused to obey a direct order from Officer Anderson to get out of the shower?

3. Whether Griffith offered any resistance when Officer Anderson entered the shower area and began to physically assault Griffith?

4. Whether the force utilized by Officer Anderson was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically applied to cause harm to Griffith?

5. Whether Officer Anderson utilized unnecessary and excessive use of force against Griffith?

6. Whether Officer Anderson unlawfully assaulted Griffith with his hands, feet, and/or a baton?

7. Whether Officer Anderson falsified documents during the course of the investigation in an attempt to conceal his assault against Griffith?

8. Whether Officer Anderson violated Griffith's constitutional rights by intentionally withholding medical treatment for Griffith's medical injury?

9. Whether Officer Anderson violated departmental regulations and protocol involving protective custody inmates?

10. Whether Officer Peterson violated Griffith's constitutional rights by furnishing Officer Anderson with the baton used to assault Griffith?

11. Whether Officer Peterson was complicit in the assault and attempted to conceal the assault by falsifying statements following the incident?

12. Whether Officer Peterson violated Griffith's constitutional rights by intentionally withholding medical treatment for Griffith's medical injuries?

13. Whether nurse Leverette violated Griffith's constitutional rights by intentionally withholding medical treatment for Griffith's injuries?

14. Whether nurse Leverette violated Griffith's constitutional rights by refusing to document Griffith's injuries, and showing deliberate indifference to Griffith's pain and suffering?

15. Whether nurse Dulaney violated Griffith's constitutional rights by refusing to document Griffith's injuries, and showing deliberate indifference to Griffith's pain and suffering?

16. Whether nurse Dulaney violated Griffith's constitutional rights by intentionally withholding medical treatment for Griffith's injuries?

These factual disputes are clearly material. The Plaintiff has submitted an enormous amount of evidence to this court demonstrating the existence of numerous

controversies between the parties regarding material issues of genuine fact. "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr*, 965 F 2d at 998 (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S Ct 990, 994, 8 L Ed 2d 176 (1982). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor". *Tipton*, at 999 (quoting *Anderson*, 477 U.S. at 255, 106 S Ct 2513; citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S Ct 1598, 1608, 26 L Ed 2d 142 (1970).

The evidence currently before this court is substantial, corroborates each essential element of Plaintiff's claims, and would support a jury verdict in Plaintiff's favor. The Plaintiff has demonstrated the existence of genuine issues of material fact, and Officer Anderson and Officer Peterson are not entitled to summary judgment as a matter of law. Therefore, the defendant's motion for summary judgment should be denied, and a jury should be empanelled to hear this evidence and determine the issues of fact at trial.

## Heightened Pleading Standard

The Plaintiff agrees with the Defendants' statement that a heightened pleading standard exists under 28 U.S.C.

7

§1915A (Answer p.5); however, this has no impact on the case
at bar. In the present case, the Plaintiff has filed a
thorough complaint with this court, clearly articulating the
facts surrounding the controversies, correctly raising the
applicable issues of law, detailing how each defendant
violated his civil rights, and itemizing the equitable
relief sought. The Plaintiff does not rely on vague or
conclusory allegations, but has submitted well-pleaded facts
and reasonable inferences drawn from those facts.
Accordingly, the defendants' argument is without merit.


2. THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
   PLAINTIFF'S UNLAWFUL USE OF EXCESSIVE FORCE CLAIMS.


The Eighth Amendment prohibits the infliction of "cruel
and unusual punishment". U.S. Constitution, Amendment VIII;
*Wilson v. Seiter*, 501 U.S. 294, 297, 111 S Ct 2321, 2323,
115 L Ed 2d 271 (1991). The Eighth Amendment, which applies
to the states through the Due Process clause of the
Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660,
666, 82 S Ct 1417, 1420, 8 L Ed 2d 758 (1962), prohibits the
infliction of cruel and unusual punishments on those
convicted of crimes. The Eighth Amendment inquiry is
"whether force was applied in a good faith effort to
maintain or restore discipline or inflicted maliciously and

8

sadistically for the very purpose of causing harm". *Sims v. Mashburn*, 25 F 3d 980, 983 (11th Cir 1994)(citing *Hudson v. McMillan*, 503 U.S. 1, 8, 112 S Ct 995, 999, 117 L Ed 2d 156 (1992)); *Whitley v. Albers*, 475 U.S. 312, 320321, 106 S Ct 1078 (1986). "When prison officials maliciously and sadistically use force to cause harm contemporary standards of decency are always violated". *Hudson*, at 8. Courts in this circuit follow a two-part test to decide whether a valid use of force claim exists: 1) an objective component to determine if the injury was harmful enough to establish a constitutional violation, and 2) a subjective component to determine if the defendants acted maliciously and sadistically to cause harm. *Lanier v. Fralic*, 2000 WL 1844679*4 (11th Cir 2000). When both the objective and subjective components are met, then a violation of the Eighth Amendment is found. *Farmer v. Brennan*, 511 US 825, 834, 114 S Ct 1970, 1977, 128 L Ed 2d 811 (1994).


### Defendant Anderson


Applying the facts in evidence to the governing principles of law, Defendant Anderson is not entitled to summary judgment on Plaintiff's excessive use of force claim because Anderson's actions meet both components of the analysis.

Objectively, the number and extent of Plaintiff's injuries in this case cannot be labeled *de minimus*. The Plaintiff received at least 13 separate injuries as a result of the altercation with Defendant Anderson (Griffith Medical Charts). The internal investigation by the Department of Corrections concluded that Plaintiff suffered injuries "from his head to his foot" (I & I Report p.1). The photographs and medical charts of Plaintiff's injuries do not show *de minimus* injuries, but instead reflect the aftermath of the brutal assault: Plaintiff had an approximately 8" oblong contusion on his left leg, temporary loss of hearing and a potential concussion from hitting his head on the concrete floor, and numerous abrasions and contusions all over his whole body (I & I Report, Photographs, Medical Charts). The Plaintiff's extensive injuries objectively rise to the level of constitutional violations.

Subjectively, the evidence and exhibits show that Defendant Anderson acted "maliciously and sadistically" to cause Plaintiff harm, not to maintain or restore order. The sworn affidavits of Plaintiff and eyewitness Christopher Jordan all assert that no use of force whatsoever was necessary under the circumstances (Griffith Affidavit ¶7); Jordan Statement p.3-4). The Plaintiff complied with the orders he was given, and never resisted Defendant Anderson

in any way (Griffith Affidavit ¶7). The facts asserted by Plaintiff are evidence that Defendant Anderson was acting "maliciously and sadistically to cause harm", which would support a jury verdict in the Plaintiff's favor. See *Oliver v. Collins*, 914 F.2d 56, 59 (5th Cir 1990)(testimony that a beating was completely gratuitous and that no force at all was necessary would support a finding of malice); *Lewis v. Downs*, 774 F.2d 711, 714 (5th Cir 1985)(evidence that an officer kicked a handcuffed person who was lying on the ground showed malicious motivation); *Miller v. Leathers*, 913 F.2d 108, 1088 (5th Cir 1990)(malicious intent could be inferred from officer's actions).

### Defendant Peterson

In regards to Defendant Peterson, he is not entitled to summary judgment because was aware of, or was present at, an unlawful beating and did nothing to stop it. Prison personnel can be held liable for their failure to intervene if it causes a constitutional violation. A corrections officer "who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excess force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F 3d 1295, 1301 (11th Cir 2002).

The evidence against Peterson, when viewed in the light most favorable to the Plaintiff, permits the reasonable inference that, if Peterson did not himself engage in hitting and assaulting the Plaintiff, he stood by idly while Defendant Anderson did so. Plaintiff's affidavit, taken as true, establishes a genuine issue of material fact regarding whether Defendant Peterson had knowledge of specific facts from which an inference could be drawn that a "substantial risk of harm existed to Plaintiff, that [Peterson] actually drew this inference, and thereafter ignored that risk". *Oliver v. Campbell*, 2006 U.S. Dist. Lexis 11540 (11th Cir 2006); *Black v. Glover*, 2006 U.S. Dist. Lexis 730 (11th Cir 2006).

Officer Peterson states in his affidavit that he did not witness the altercation between Officer Anderson and Griffith (Peterson Affidavit p.1), but the Incident Report document states "Officer Anderson entered the shower with Officer Peterson following" (Defendant's Exhibit 3, Incident Report p. 2), and that Officer Peterson escorted Griffith to his cell following the incident. Officer Peterson also claims in his affidavit that he did not supply Officer Anderson with the baton used to assault Griffith (Peterson Affidavit p.1). In rebuttal, Plaintiff submits another sworn affidavit from an additional eyewitness, inmate Wendell

Lovell, stating he personally witnessed Officer Peterson receive the baton back from Officer Anderson immediately following the assault (attached as 'Exhibit B').

Officials who know, or reasonably should know, of a constitutional violation can be held liable if they fail to do anything about it. In this case, Defendant Peterson knew that Defendant Anderson was assaulting the Plaintiff, and even supplied the baton that Anderson used to beat the Plaintiff, but chose not to intervene. He is therefore liable for his actions. *Buckner v. Hollins*, 983 F.2d 119, 121-22 (8th Cir 1993); *Bolin v. Black*, 875 F.2d 1343, 1347-48 (8th Cir 1989).

The documents in evidence also reflect that the hierarchy of prison administrators all believed an unjustified assault had actually occurred; to-wit: Sgt. Smith ordered additional body charts and witness statements (Smith Statement), both Lieutenant Clay and Captain Bowling requested administrative review, and Warden Holt recommended the incident be investigated by the department's I & I Division (I & I Report). Defendant Anderson even admits in his own affidavit that he was suspended for 15 days without pay by the Department of Corrections because of his wrongdoing in this case (Defendant's Exhibit 1, Anderson

13

Affidavit, p.2). The final determination of the internal
investigation states:

> "The investigation has revealed that Officer Anderson
> has given a signed false statement, in which Officer
> Anderson lied about the incident. The investigation
> also revealed that Officer Anderson committed
> departmental violations and assaulted inmate Griffith."
> (I & I Report p.1)(emphasis added)

Clearly, the documents and exhibits before the court
support a finding that the Plaintiff could prove all the
essential elements of his claims stating that Defendant
Anderson and Defendant Peterson violated his constitutional
rights to be free from the unnecessary use of force and the
denial of medical care at trial. Based on this evidence, a
jury could return a verdict in the Plaintiff's favor;
therefore, the Defendants' request for summary judgment
should be denied on these grounds.

3. **THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S DELIBERATE INDIFFERENCE AND DENIAL OF MEDICAL
CARE CLAIMS.**

The Supreme Court has stated that "deliberate
indifference to serious medical needs" of inmates
constitutes the "unnecessary and wanton infliction of pain"
proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429

U.S. 97, 104, 97 S Ct 285 (1976). Deliberate indifference is used to measure the adequacy of officials' responses to the known medical needs of inmates, and the delay or denial of access to medical attention is one of the factors recognized by *Estelle*, supra.

<u>Defendant Anderson</u>

The evidence shows that Griffith asked defendant Anderson to take him to the infirmary immediately following the incident wherein he was assaulted (Griffith Affidavit ¶¶11,12; Complaint ¶¶22,23). The request was denied, even though Anderson knew that Griffith was injured and needed medical attention. Although claiming no wrongdoing, Officer Anderson admits in his affidavit that Griffith received injuries during the altercation in the shower (Anderson Affidavit p. 2). Despite being aware of Griffith's injuries, Officer Anderson asserts that he locked Griffith back in his cell for over 45 minutes and continued to shower other inmates -- as if nothing had happened (Anderson Affidavit p.2). Griffith was not taken to the infirmary until almost two hours later (Griffith Affidavit ¶13-15). This evidence supports a finding that Anderson was "subjectively aware" that Griffith was hurt and needed prompt medical treatment, but Anderson simply ignored Griffith's pleas for medical

15

attention, resulting in undue pain and suffering. This is a prime example of "deliberate indifference", supported by Officer Anderson's own affidavit.

<div align="center">Defendant Peterson</div>

Griffith also made several requests for medical treatment to Officer Peterson following the incident, but Officer Peterson denied these request (Griffith Affidavit ¶14;Complaint ¶25). Supporting documentation reveals that Officer Peterson was present during the assault and escorted Griffith back to his cell at 4:35 pm following the incident (attached Exhibit 'A' and Exhibit 'B')(Incident Report p.2). Clearly, Officer Peterson was "subjectively aware" of the injuries Griffith had received during the assault, but chose not to seek medical treatment for Griffith. Despite having a possible head concussion, Griffith did not receive any treatment until 6:05 pm, when he was finally taken to the infirmary. By leaving an obviously injured inmate locked in a cell for two hours before taking him to the infirmary for medical treatment, Officer Peterson subjected Griffith to "undue pain and suffering" in violation of the Eighth Amendment. This rises to the level of constitutional violations.

<div align="center">16</div>

The evidence supports a finding that both officers had subjective awareness of Griffith's injuries, but were deliberately indifferent to Griffith's serious medical needs. Therefore, Officer Anderson's and Officer Peterson's request for summary judgment in regards to Griffith's claims of deliberate indifference and the denial of medical care should be denied.

## 4.  THE DEFENDANTS ARE NOT ENTITLED TO IMMUNITY

### Eleventh Amendment Immunity

Defendants Anderson and Peterson allege that they are entitled to sovereign immunity under the Eleventh Amendment, but this argument is incorrect. Eleventh Amendment immunity attaches only when the damages sought would be paid directly from state funds, *Robinson v. Georgia Dept. of Trans.*, 966 F2d 637, 638-39 (11th Cir 1992), but not when the Defendants are sued in their individual capacities, as in the present case. The State of Alabama is not named as a party to this suit and is not a "substantial party of interest". *Carr v. City of Florence, Ala.*, 916 F2d 1521, 1524 (11th Cir 1990). The plaintiff conscientiously chose not to seek any damages from the state, nor any of its administrative agencies, but instead elected to sue the defendants in their personal

capacities in order to preclude an Eleventh Amendment immunity defense. While the Eleventh Amendment would shield state officers from suit in their official capacity, these officers are liable for suit in their individual capacities under §1983 for violating Plaintiff's constitutional rights and federal law. *Kentucky v. Graham*, 473 US 159, 165, 105 S Ct 3099, 87 L Ed 2d 114 (1985). Therefore, defendants Anderson and Peterson are not entitled to immunity from suit under the Eleventh Amendment, and their argument is without merit.

<u>Qualified Immunity</u>

Defendants Anderson and Peterson also argue that they are entitled to qualified immunity on the Plaintiff's excessive use of force and denial of medical care claims, but this argument is equally without merit under the facts of this case. Eleventh Circuit law precludes a defense of qualified immunity in cases alleging excessive use of force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir 2002). Thus, a qualified immunity defense is not available when a Plaintiff alleges the use of excessive force, as in this case, and the only question for the court is whether the

18

evidence is sufficient to survive a motion for summary judgment, *Skrtich*, at 1302; see also *Hudson*, 503 U.S. 9-10, and *Harris v. Chapman*, 97 F3d 499, 505 (11th Cir 1996).

Furthermore, state officials can only acquire qualified immunity for discretionary acts, which do not apply to the case at bar because Plaintiff raises claims of intentionally malicious acts. Plaintiff proposes that assault and battery with a wooden baton is *not* a discretionary act. Falsifying documents in the course of the investigation is *not* a discretionary act. Deliberate indifference to physical pain and suffering is *not* a discretionary act. The denial of medical care for a known medical injury is *not* a discretionary act. Each of these claims involves intentional and deliberate conduct, thus the Defendants cannot rely on immunity deriving from discretionary job functions.

Moreover, the Eleventh Circuit has found a common thread among Eighth Amendment violations in prisons where it has been found there has been a continuous, regularly occurring, and documented litany of violence in the facility in question, and when the officer had at the very least some degree of prior actual constructive knowledge of the violence at the facility. The facility where Plaintiff was assaulted, Kilby Correctional facility, has a long history of officer on inmate violence, *Besselaar v. Seigelman*, 2001

19

U.S. Dist Lexis 8760 (11th Cir 2001); *Hale v. Tallapoosa County*, 50 F 3d 1579 (11th Cir 1995); *LaMarca v. Turner*, 995 F2d 1526, 1536 (11th Cir 1993), so Defendant Peterson cannot claim that he was unaware of the clearly established federal law in this circuit. Therefore, the defendants are not entitled to qualified immunity in the present case.

## CONCLUSION

Wherefore, based on the foregoing facts, the Plaintiff has demonstrated the existence of genuine issues of material facts in this case; that the defendants' actions rose to the level of constitutional violations; that the defendants are not shielded with immunity for their deliberate wrongdoings; and that the defendants are not entitled to the judgment sought under law. Accordingly, the defendants' motion for summary judgment is due to be denied in reference to Defendant Anderson and Defendant Peterson. Respectfully submitted on this 30th day of November 2007.

Jody Griffith
Pro se

## CERTIFICATE OF SERVICE

I hereby swear and affirm that I have served a copy of the foregoing 'Plaintiff's Motion in Opposition to Summary Judgment' on the defendants by placing a copy of the same in the U.S. Mail, postage prepaid, addressed to Benjamin H. Albritton, Assistant Attorney General, Office of the Attorney General, 11 S. Union Street, Montgomery, AL 36130, and Alabama Department of Corrections, Legal Division, P.O. Box 301501, Montgomery, AL, 36130, on this 30th day of November, 2007.

Jody Griffith

STATE OF ALABAMA                         AFFIDAVIT OF JODY GRIFFITH

COUNTY OF LIMESTONE


I, Jody Griffith, hereby declare the following under penalty of
perjury:

1. My name is Jody Edwin Griffith. I am the plaintiff in the
above-styled case. I make this affidavit in opposition to
defendants Gary Anderson and Anthony Peterson motion for summary
judgment in regards to my assault, excessive use of force, denial
of medical care, and deliberate indifference claims.

2. The Defendants are not entitled to summary judgment because
there are genuine issues of material fact to be resolved. These
issues are further identified in the 'STATEMENT OF DISPUTED
FACTS' and 'MOTION IN OPPOSITION TO SUMMARY JUDGMENT' documents
filed contemporaneously with this affidavit. Pertinent facts in
dispute are also set out in this affidavit.

3. Officer Anderson states in his affidavit that he was simply
attempting to remove me from the shower after I refused a direct
order from him, but this statement is not true. I followed all
orders that I was given, and I never disobeyed any of Officer
Anderson's instructions.

4. The Special Report submitted by the defendants' states that I
fought with Officer Anderson and resisted removal from the
shower, but this statement is not true. I never fought with
Officer Anderson. Without warning, Officer Anderson simply
assaulted me for no reason.

5. Contrary to the statements contained within the defendants'
Special Report, Officer Anderson did not use force to restore
order nor maintain discipline. No use of force was necessary at
all under the circumstances. I was naked, wet, and getting out of
the shower when I was attacked and assaulted for no reason.

6. Officer Anderson's affidavit dated September 27,2007, claims
that I verbally and physically refused his direct order to "back
up to the showers cage door to have my handcuffs
removed"(Anderson Affidavit p.2); however, Officer Anderson had
already removed the handcuffs from both myself and inmate
Christopher Jordan before we entered the shower cage together. I
did not argue with Officer Anderson about being un-handcuffed

1

because I was already un-handcuffed and taking my shower. I even received a "Disciplinary Report" for refusing to be handcuffed.

7. Officer Anderson claims in his affidavit that I slipped from his grasp and fell to the floor, but this is not true. Officer Anderson actually hit me with the steel shower door, stepped inside the shower cage, hit me with a baton, and forcefully threw me out of the shower cage onto the floor, knocking me unconscious.

8. Officer Anderson claims to have helped me to my feet while I was lying on the floor, and then escorting me to the top of the stairs, but this is not true. Officer Anderson threatened me with further assault if I did not get to my feet myself, and he did not help me in any way. I was still un-handcuffed lying in the floor, I got back to my feet on my own, and I limped back to my cell unassisted.

9. Officer Anderson alleges in his affidavit that he did not fail to provide me with medical treatment for my injuries (Anderson affidavit p.2), but this statement is also not true. It was almost two hours before I received any medical attention. Officer Anderson left me locked in my cell from 4:35 pm until 6:20 pm., when I was escorted to the infirmary by Officer Dinkins.

10. Officer Peterson's affidavit dated October 09,2007, claims that I never told him I had been assaulted by Officer Anderson (Peterson Affidavit p.1), but this is not true. I reported the assault to Officer Peterson when he asked about my handcuffs. This conversation lasted about two minutes, and I showed him my injuries as well.

11. Officer Peterson claims in his affidavit that I never requested to speak to the Shift Commander nor to be taken to the infirmary for treatment, but this is also not true. I made both requests to Officer Peterson and both were denied.

12. Officer Peterson claims in his affidavit that he never supplied Defendant Anderson with the baton used to assault me, but witnesses saw Officer Peterson receive the baton from Officer Anderson immediately following the incident.

13. Peterson claims that I never talked about a baton in my original statement, but this is not true. My original statement dated November 23, 2006, states that "I was hit in the leg by a baton".

2

14. Officer Anderson claims in his affidavit that I would not allow him to remove my handcuffs and this is why he ordered me out of the shower, but this statement is not true. He had already removed my handcuffs and I was not handcuffed at the time of the incident. The 'Disciplinary Report' dated November 29, 2006, states that I refused to comply with an order to "back up to the shower gate to be handcuffed".

15. Officer Anderson admits to falsifying records about the incident, failing to provide proper medical attention. I believe he did this in an attempt to conceal his assault against me. Officer Anderson admitted to lying in his initial statement only when Officer Peterson would not back his contrived story.

16. I was a former corrections officer for ten years and worked for the Alabama Department of Corrections, having the same job position as Officer Anderson and Officer Peterson, and I am familiar with the Department of Corrections' administrative regulations and standard operating procedures pertaining to the use of force. I know from personal experience that the actions of both Officer Anderson and Officer Peterson violated departmental regulations. I further know that the use of force employed against me by Officer Anderson was not justifiable.

_Jody Griffith_                    _11-30-07_
Jody Griffith                       Date


**NOTARY PUBLIC**


State of Alabama
County of Limestone


        I, the undersigned notary of the state and county stated, hereby affirm that the individual listed above appeared before me and executed the foregoing 'Affidavit of Jody Griffith' in my presence on this 30th day of November 2007.

_Mark Keene_                    _11-30-07_
Notary Public                    Date


My commission expires: _9-26-11_

3

STATE OF ALABAMA                          AFFIDAVIT OF WENDELL LOVELL

COUNTY OF LIMESTONE

I, Wendell Lovell, having first been duly sworn, hereby declare the following under penalty of perjury:

1. My name is Wendell Lovell. I am an inmate housed with the Alabama Department of Corrections. I am over nineteen years old.

2, On November 23, 2006 I was assigned to cell D-2 in Kilby Correctional Facility's Segregation Unit.

3. A few minutes after returning to my cell from showering, I heard a lot of noise from the shower area down on C-Block.

4. I walked to the front of my cell to see what was going on.

5. I seen Officer Peterson standing at the top of the stairs that overlooked the shower area on C-Block.

6. I saw a baton tossed to Officer Peterson from the shower area on C-Block.

7. Officer Peterson caught the baton, placed it on his side, walked past my cell, down the tier, and away from the stairs in the shower area.

8. A few minutes later, I saw inmate Jody Griffith limp slowly up the stairs and past my cell from the C-Block shower area.

9. I seen an abrasion on Griffith's left shoulder and a large red mark on the back of his left leg as he walked past my cell. Griffith was naked but holding a towel in his hands.

10. I later heard inmate Griffith complaining of being beaten by Officer Anderson while in the shower area.



Wendell Lovell                    Date

## NOTARY PUBLIC

**State of Alabama**
**Limestone County**


      Sworn to and subscribed before me and under my hand and
official seal this $\underline{28}$ day of $\underline{Nov}$_____, 2007.

_Mark Reeve_
                              **Notary Public**


My commission expires: $9-24-11$