**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JODY EDWIN GRIFFITH, #249169,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:07-CV-00749** |
| | ) | |
| **GARY ANDERSON, OFFICER** | ) | |
| **PETERSON, ALFREDA DULANEY,** | ) | |
| **AND HERBERT LEVERETTE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SPECIAL REPORT AND ANSWER OF
DEFENDANTS ALFREDA DULANEY AND HERBERT LEVERETTE**

COME NOW, Defendants NURSE ALFREDA DULANEY ("Dulaney") and NURSE

HERBERT LEVERETTE  ("Leverette") in response to this Court's Order dated January 31,

2008, requiring Dulaney and Leverette to provide their Special Report and Answer, and submit

the following Special Report and Answer addressing the allegations asserted in the Complaint

filed by Plaintiff JODY EDWIN GRIFFITH ("Plaintiff"):

I.      **INITIAL DISCLOSURES**

Dulaney and Leverette make the following initial disclosures as required by this Court's

January 31, 2008, Order for Special Report:

1.      The sworn statement of Nurse Dulaney[1];

2.      The sworn statement of Nurse Leverette[2]; and

3.      The excerpts from Plaintiff's medical records attached thereto.[3]

---

[1]      A true and correct copy of Dulaney's affidavit ("Dulaney Aff.") is attached hereto as
**Exhibit A** and incorporated herein by reference.

[2]      A true and correct copy of Leverette's affidavit ("Leverette Aff.") is attached hereto as
**Exhibit B** and incorporated herein by reference.

## II.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

### A.    PROCEDURAL HISTORY

Plaintiff, an inmate formerly incarcerated at the Kilby Correctional Facility ("Kilby") in Montgomery, Alabama, instituted this action on or about August 14, 2007. (See Complaint at p. 2). In a six-page narrative attached to his original Complaint, Plaintiff describes a series events beginning at 4:30 p.m. on November 23, 2006, which ultimately resulted in an altercation between Plaintiff and members of the correctional staff at Kilby.  (Complaint at pp. 5-11). Plaintiff's allegations regarding two members of the Kilby medical staff relate to their evaluation of Plaintiff's condition after this altercation. (Complaint at pp. 8-9).  At the time Plaintiff instituted this action, he could not identify by name the members of the medical staff involved in the alleged altercation, identifying them only as a "male nurse" and "female nurse." (Id.). Specifically, Plaintiff alleged that the male nurse and female nurse asked Plaintiff to identify his injuries at that time and the male nurse refused to document any of the injuries allegedly resulting from the altercation with the members of the medical staff. (Id.).

Plaintiff first identified Dulaney and Leverette as defendants, i.e. as the "female nurse" and "male nurse," in this action in his Amended Complaint, which was submitted to the Court on November 13, 2007.  According to the certified mail return receipt, which returned to the Court regarding service of the summons and complaint, the summons and complaint were addressed to Dulaney and Leverette at Kilby and were signed for by an individual named Paul Rogers.  When neither Dulaney nor Leverette responded to the Court's November 13, 2007, Order for Special Report, the Court entered an Order for Dulaney and Leverette to show cause why they had not

---

[3]    A true and correct copy of excerpts of Plaintiff's medical records are attached hereto as **Exhibit C** and incorporated herein by reference.  For purposes of this Special Report and Answer, Dulaney and Leverette will cite to and refer to portions of Plaintiff's medical records by Bates-number which begin with the prefix "PHS."

filed their Special Report and Answer. This Order was also addressed to Dulaney and Leverette at Kilby and was signed for by an individual name Bruce Vermillyer at Kilby on or about February 4, 2008. On January 31, 2008, Dulaney and Leverette appeared in this action and requested additional time to respond to the outstanding orders and directions from the Court. The Court granted this request on January 31, 2008. ***Together with this Special Report and Answer, Dulaney and Leverette submit their Response to Order to Show Cause regarding the belated filing of their Special Report and Answer.***

## B. PROCESSES AND PROCEDURES AT KILBY CORRECTIONAL FACILITY

### 1. SICK CALL PROCESS

When an inmate has a non-emergency medical or health problem and/or complaint, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff at Kilby and/or request medical treatment for this problem. (Dulaney Aff. at ¶ 6). The sick call request process is well-known at Kilby and is utilized by inmates at Kilby on a daily basis. (Id.). When an inmate first arrives at Kilby, he is taken to the Health Care Unit to be processed into the system and receives an orientation as to the availability of medical services at the facility as well as the procedures for obtaining medical care. (Id.). During this orientation, the medical staff gives each inmate an information sheet and verbally goes through the sheet with newly-arriving inmates, informing them how to utilize the sick call request form process. (Id.). Sick call request forms are available in the Health Care Unit at the shift commander's station or may be obtained from the Alabama Department of Corrections ("ADOC") officer in each dorm at Kilby. (Id.). An inmate making a sick call request is required to complete the top portion of the sick call request form (stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature)

and submit the sick call request form by placing it in a locked box located outside the facility's kitchen (i.e., chow hall). (Id.). The sick call request forms are removed from the locked box each day and brought to the Health Care Unit. (Id.). Upon retrieving the sick call request forms, the medical staff compiles a list of inmates having submitted a sick call request form, which is sent to the various dorms at Kilby. (Id.). Kilby conducts sick call five (5) times per week, Sunday through Friday excluding holidays or unexpected emergencies. (Id.). Sick call begins at 7:00 p.m. and lasts as long as required to examine all the inmates who report to sick call. (Id.). Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints at the time they are summoned to the Health Care Unit for sick call. (Id.). The number of inmates reporting to sick call each day varies between approximately ten (10) and thirty-five (35). (Id.). The nurse conducting sick call takes reporting inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Easterling. (Id.). If the inmate fails to report to sick call when summoned, this is often indicated in the sick call request form because it is left blank by the medical staff. (Id.). If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-threatening, the medical staff will immediately have the inmate brought to the infirmary (located within the Health Care Unit) and the inmate will be examined and treated by a physician. (Id.).

### 2.    GRIEVANCE PROCEDURE

The medical staff at Kilby utilizes a well-established grievance procedure for any inmate who wishes to voice a complaint regarding any medical treatment he has sought or received during his incarceration at Easterling. (Id. at ¶ 7). The initial orientation process at Kilby

includes educating inmates as to the availability of the grievance process. (<u>Id.</u>). The existence of Kilby's grievance procedure is well-known among the prison population, as indicated by the fact that the Health Services Administrator at Kilby receives inmate requests and/or inmate grievances on a daily basis. (<u>Id.</u>). The physicians, nurse practitioners, nurses and other medical personnel at Kilby attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted. (<u>Id.</u>).

The grievance process is initiated when an inmate submits an informal Inmate Grievance form to the medical staff through the institutional mail system. (<u>Id.</u> at ¶ 8). After reviewing the Inmate Grievance, the HSA then provides a written response within five (5) days of receipt of the Inmate Grievance. (<u>Id.</u>).  The HSA's written response to an Inmate Grievance is included on the bottom portion of the same form containing an inmate's Inmate Grievance. (<u>Id.</u>).  Below the portion of the form designated for the "Response," the following notation appears:

> IF YOU WISH TO APPEAL THIS REVIEW YOU MAY REQUEST A <u>GRIEVANCE APPEAL</u> FORM FROM THE HEALTH SERVICES ADMINISTRATOR.  RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEALTH SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.

(<u>Id.</u>).  As stated in the Inmate Grievance forms, the second step of the grievance process involves the submission of a formal Grievance Appeal, at which time the inmate may be brought in for one-on-one communication with the Health Services Administrator and/or the Director of Nursing. (<u>Id.</u>).

A written response to a formal Grievance Appeal is provided within five (5) days of receipt. (<u>Id.</u>).  Inmate Grievance and Grievance Appeal forms are available from the correctional officers at Kilby. (<u>Id.</u>).  Inmates are instructed to place completed Inmate Grievance and Grievance Appeal forms in the sick call boxes located throughout the facility. (<u>Id.</u>).  When

received in the Health Care Unit, Inmate Grievance and Grievance Appeal forms are delivered to the HSA by the medical records clerk or administrative assistant. (Id.). The HSA reviews the Grievances daily, provides a written response within five (5) days at the bottom of the form and returns a copy of the completed forms to the inmate. (Id.). The medical staff at Kilby encourages inmates who have complaints about the medical care they have sought or received at Kilby to utilize this grievance process. (Id.).

There is simply no evidence that Plaintiff ever utilized the grievance process to voice any complaints about the events that transpired on November 23, 2006, and/or the care provided to him in conjunction with these events. (Dulaney Aff. at ¶ 8).

### C. PLAINTIFF'S INTERACTION WITH NURSES LEVERETTE AND DULANEY ON NOVEMBER 23, 2006.

Nurses Leverette and Dulaney are licensed practical nurses serving on the medical staff at Kilby (Leverette Aff. at ¶2; Dulaney Aff. at ¶ 2). On November 23, 2006, they were both working in the health care unit or infirmary at Kilby. (Leverette Aff. at ¶ 4; Dulaney Aff. at ¶ 9). On November 23, 2006, Plaintiff reported to the Health Care Unit at Kilby following an altercation between Plaintiff and the correctional staff at Kilby. (Leverette Aff. at ¶ 4; Dulaney Aff. at ¶ 9; PHS016). The correctional officers escorting Plaintiff requested that Dulaney and Leverette conduct an examination of Plaintiff prior to his placement in segregation. (Id.). When Leverette began his evaluation of Plaintiff, Plaintiff was extremely angry and upset. (Id.). At that time, Plaintiff did not cooperate in any fashion in the examination and, ultimately, Leverette concluded that he could not conduct a full physical examination due to Plaintiff's agitated state. (Id.). At that time, Leverette was able to conduct a complete visual examination of Mr. Griffith and Nurse Alfreda Dulaney obtained Plaintiff's vital signs. (Id.). Neither Leverette nor Dulaney saw any signs or symptoms at that time that Plaintiff was suffering from any serious medical

condition which required immediate medical attention. (Leverette Aff. at ¶ 6; Dulaney Aff. at ¶ 9).

Plaintiff was then moved to segregation where the officers later called Leverette again to examine Plaintiff after he had calmed down.  (Leverette Aff. at ¶ 4; PHS015).  At that time, Leverette completed a second "body chart" recording his observations of the scrapes and bruises which were present on Plaintiff. (Id.). In Leverette's opinion, none of the scrapes or bruises required stitches or further medical attention. (Id.).  Furthermore, Plaintiff did not appear to be in any significant pain or distress which would indicate that his injuries were life-threatening or required any medical attention. (Id.). Leverette instructed Plaintiff to submit a sick call request form if he needed any further attention of any kind. (Id.).

Though Plaintiff asserts various allegations regarding statements made by Dulaney and/or Leverette during the course of their evaluation of him on November 23, 2006 (see Complaint at pp. 8-9), Dulaney and Leverette recall inquiring as to the cause of Plaintiff's alleged injuries and requesting that Plaintiff assist in identifying the alleged injuries. (Leverette Aff. at ¶ 6; Dulaney Aff. at ¶ 9).  However, Dulaney and Leverette did not make the other statements alleged in Plaintiff's Complaint regarding siding with various people, their lunch schedule or any of the other alleged statements. (Leverette Aff. at ¶ 4; Dulaney Aff. at ¶ 9).  Since this November 23, 2006, interaction with Plaintiff, neither Dulaney nor Leverette have had any interaction with and/or any role in the medical care provided to Plaintiff. (Leverette Aff. at ¶ 3; Dulaney Aff. at ¶ 9).

Following the events of November 23, 2006, Plaintiff submitted a sick call request form complaining of jaw pain, headaches and left ear pain. (Leverette Aff. at ¶ 5; PHS013).  Plaintiff reported to sick call on November 27, 2006, and was referred to the nurse practitioner for further

evaluation. (Leverette Aff. at ¶ 5; PHS014).  During an examination by the nurse practitioner on November 27, 2006, Plaintiff only complained of ear pain and headaches and he received a prescription for Motrin.  (Leverette Aff. at ¶ 5; PHS001, 3).  He did not voice any other complaints at that time. (Id.).

Plaintiff appeared at sick call on December 4, 2006, complaining of left thigh pain. (Leverette Aff. at ¶ 5; PHS011, 12).  He was referred to the nurse practitioner for further evaluation. (Id.).  An evaluation of Plaintiff on December 4, 2006, by the nurse practitioner at Kilby indicated that all of his complaints had been resolved except for a bruise on his left thigh. (Leverette Aff. at ¶ 5; PHS002).  However, the nurse practitioner noted that this left thigh bruise did not appear to impact Mr. Griffith's gait or movement. (Id.).  The nurse practitioner at Kilby ordered an x-ray of Mr. Griffith's left thigh (see id.), but this x-ray did not occur before Mr. Griffith was transferred to Limestone Correctional Facility. (Leverette Aff. at ¶ 5; PHS010).  In his transfer documentation, the medical staff at Kilby notified the medical staff at Limestone of this outstanding order and recommended that they proceed with the x-ray if Plaintiff's complaints continued. (Id.).

When Plaintiff arrived at Limestone Correctional Facility, a member of the correctional staff noted that Plaintiff did not exhibit "any obvious pain or . . . other symptoms suggesting the need for emergency services" and that there were no "visible signs of trauma . . . requiring immediate emergency or doctor's care." (PHS120). After his transfer, Mr. Griffith did not submit any sick call request forms requesting further evaluation or treatment of his left thigh. (Leverette Aff. at ¶ 5; PHS004-8)

III.    **DISCUSSION**

It is difficult, if not impossible, to decipher from Plaintiff's Complaint the exact basis of his claims against Nurse Dulaney and/or Nurse Leverette. Plaintiff's Complaint complains about statements made by Dulaney and Leverette and the manner in which Leverette, in particular, allegedly conducted the examination, but Plaintiff does not claim that he required any specific medical treatment and/or that either Dulaney or Leverette failed or refused to provide him with any necessary medical care. As indicated through the attached medical records and affidavits, Plaintiff has received medical attention from Dulaney and Leverette who evaluated and documented his condition following the November 23, 2006, incident. It is simply impossible to characterize Plaintiff's claims as claims related to the denial of medical care. More appropriately, Plaintiff's claims relate to a generalized set of grievances regarding the manner in which Dulaney and Leverette conducted an examination. Such allegations hardly fall within the ambit of allegations actionable under § 1983.

As discussed in greater detail below, the evidence presented by Dulaney and Leverette demonstrates:

> (1)    Neither Nurse Dulaney nor Nurse Leverette violated Plaintiff's Eighth Amendment right to necessary medical treatment;
>
> (2)    Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a); and
>
> (3)    Plaintiff improperly seeks damages for "emotional and mental distress" in derivation of the Prison Litigation Reform Act, 42 U.S.C. §1997e(e).

Plaintiff's Complaint does not identify any specific instance when he requested medical treatment and either Dulaney or Leverette refused to provide him with any necessary medical treatment. In sum, Plaintiff simply claims that he was dissatisfied with the manner in which he was examined on November 23, 2006. For these reasons and the reasons stated below, Plaintiff

is not entitled to assert a claim for deliberate indifference against Dulaney or Leverette. Even if Plaintiff's Complaint stated a claim against Dulaney or Leverette such claims are precluded by the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

A.    **NEITHER NURSE DULANEY NOR NURSE LEVERETTE VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHT TO NECESSARY MEDICAL TREATMENT.**

In his Complaint, Plaintiff specifically claims that Dulaney and Leverette allegedly acted with "deliberate indifference to [his] serious medical needs in violation of the Eighth [A]mendment to the United States Constitution." (Complaint at p. 11). The Eighth Amendment[4] does not on its face reference in any way any medical care due to incarcerated persons. See e.g. Marsh v. Butler County, Ala., 268 F. 3d 1014, 1038 (11th Cir. 2001)(en banc). In Estelle v. Gamble, 429 U.S. 97(1976), the United States Supreme Court first inferred a prisoner's "right" to necessary medical care from the text of the Eighth Amendment. In reaching this conclusion, the Estelle Court held that the prohibition against cruel and unusual punishment in the Eighth Amendment prohibits prison officials from acting with "deliberate indifference" with regard to prisoners' serious medical needs. 429 U.S. at 104. Since Estelle, courts have routinely recognized that the Eighth Amendment[5] to the United States Constitution governs the conditions of confinement for prisoners and the treatment of these prisoners during the term of their incarceration. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509

---

[4]    The Eighth Amendment applies to the states by virtue of the Fourteenth Amendment's Due Process Clause. Robinson v. California, 370 U.S. 660, 666 (1962).

[5]    Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . ." See Hamm v. DeKalb County, 774 F.2d 1567, 1573-74 (11th Cir. 1985). To the extent PHS relies upon any cases addressing the application of the Fourteenth Amendment in the prison context, such cases are equally applicable in this case.

U.S. 25, 31 (1993)); see also Whitley v. Albers, 475 U.S. 312, 327 (1986); Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981).

An alleged claim of "deliberate indifference" under the Eighth Amendment may be actionable under 42 U.S.C. § 1983.[6] See Graham v. Connor, 490 U.S. 386, 393- 94 (1989)(recognizing that § 1983 is not a source of "any substantive right," but rather provides a means for "vindicating federal rights elsewhere conferred."). Every claim by a prisoner that he has not received adequate medical treatment does not state a violation of the Eighth Amendment. McElligott v. Foley, 182 F. 3d 1248, 1254 (11th Cir. 1999).   Courts have devoted an extraordinary amount of time clearly defining the requirements for asserting and succeeding upon an Eighth Amendment claim under § 1983.  Both the Supreme Court and Eleventh Circuit have described the Eighth Amendment standard of deliberate indifference as requiring allegations and evidence of both "objective" and "subjective" components. See e.g. Farmer, 511 U.S. 825 at 834, 837; Chandler v. Crosby, 379 F. 3d 1278, 1289-90 (11th Cir. 2004).

The "objective" component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The underlying conduct or condition must be "extreme" and pose "an unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F. 3d at 1289-90 (quoting Hudson, 503 U.S. at 9)

---

[6]     42 U.S.C. § 1983 provides, in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

(other citations omitted).  At a minimum, a prisoner must allege and establish the existence of "a serious medical need." Chandler, 379 F. 3d at 1289-90; Farrow v. West, 320 F. 3d 1235, 1243 (11th Cir. 2003).  The Eleventh Circuit's long-standing definition of "serious medical need" is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See e.g. Farrow, 320 F. 3d at 1243 (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F. 3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)).  Additionally, the serious medical need must be such that, if left untreated, "pos[es] a substantial risk of serious harm." Farmer, 511 U.S. at 834. The burden falls squarely upon Plaintiff to allege and ultimately establish the existence of a serious medical need.  See e.g. Hamm v. DeKalb County, 774 F. 2d 1567 (11th Cir. 1985).

If Plaintiff successfully identifies and establishes the existence of a "serious medical need," he must also establish the "subjective" component of an Eighth Amendment violation. Plaintiff must prove Dulaney and Leverette acted with "deliberate indifference." See e.g. Farmer, 511 U.S. at 837.  This subjective component requires evidence that Dulaney and Leverette possessed actual knowledge of "an excessive risk to inmate health or safety" and disregarded that risk. Id. at 837.  Evidence demonstrating Dulaney and Leverette failed "to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" or serve as a basis for a claim of deliberate indifference. Burks v. Sikes, 169 F. 3d 1353, 1363-1364 (11th Cir. 1999)(other citations omitted); see also Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir.1996) (holding, "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not ....'" (quoting Farmer, 511 U.S. at 838)). Courts summarize this component

as requiring evidence of a "subjectively sufficiently culpable state of mind." Id. at 1491 (other citations and internal quotations omitted).

It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official. See e.g. Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990). For example, a prisoner's § 1983 claim for inadequate medical treatment cannot survive summary judgment unless and until the inmate produces evidence "of the prison official's subjective awareness" of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." Id.; Campbell v. Sikes, 169 F. 3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87 F. 3d 1266, 1269 (11th Cir. 1996)); Hill, 40 F. 3d at 1186). Without evidence of this "specific intent," a prisoner's § 1983 claim cannot succeed. Steele, 87 F. 3d at 1269.

Courts have devoted a significant amount of time identifying the specific types of allegations which do *not* give rise to the claim of "deliberate indifference." In declaring the "deliberate indifference" standard for the first time, the Estelle Court wrote, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." 429 U.S. at 106. The Eleventh Circuit in Chandler held a prisoner's discomfort does not give rise to an Eighth Amendment violation. 379 F. 3d at 1295 (citations omitted). Applying Estelle, the Eleventh Circuit also noted that a complaint that prison medical staff should have done more to diagnose and/or treat a prisoner is "at most . . . medical malpractice." Campbell, 169 F. 3d at 1363. Indeed, the Eighth Amendment does not prohibit or provide any remedy for any "accidental inadequacy . . . or even medical malpractice actionable under state law." Taylor v. Adams, 221 F. 3d 1254, 1258 (11th Cir. 2000) (quotations and citation omitted). For this reason, medical decisions not to or when to

provide certain types of medical treatment, such as an x-ray, are not actionable as a matter of law under the Eighth Amendment. Id.

In instances when inmates acknowledge treatment but contest the manner in which treatment is provided, courts have applied an altered analysis of claims involving requests for different or alternative types of medical treatment. When an inmate claims "different treatment should have been provided," such a claim "is tantamount to a medical judgment call," not an Eighth Amendment violation. McElligott, 182 F. 3d at 1259. In greater detail, the Eleventh Circuit explained in Hamm:

> Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference. See Bass v. Sullivan, 550 F.2d 229, 231-32 (5th Cir.), cert. denied, 434 U.S. 864, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); accord, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (1st Cir. 1981) ("***Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law***.").

774 F. 2d at 1575 (emphasis supplied).

The second broad category of cases in which courts have historically mandated limitations upon the liability of prison officials under the Eighth Amendment constitute cases of alleged delayed medical treatment. In cases when a prisoner actually receives medical treatment, courts employ an altered analysis of deliberate indifference. As to claims of delayed medical treatment, the Eleventh Circuit has instructed courts to be hesitant to find an Eighth Amendment violation when officials provide medical care to prison inmates. McElligott, 182 F. 3d at 1259 (11th Cir. 1999) (citing Waldrup v. Evans, 871 F. 2d 1030, 1035 (11th Cir. 1989)). In fact, a prisoner alleging delayed medical treatment must show that the official acted with deliberate indifference, meaning the official knew of the serious medical condition and "intentionally or

with reckless disregarded, delayed treatment." Hinson v. Edmond, 192 F. 3d 1342, 1348 (11th Cir. 1999). In Hill, the Eleventh Circuit added:

> Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a lay person because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation. * * * Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the condition, and considering the reason for the delay.

40 F. 3d 1176, 1188-89 (11th Cir. 1994) (emphasis added). Whether a claim arises from delayed treatment depends upon "the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F. 3d 388, 393-94 (11th Cir. 1994). Accordingly, in instances where prisoners complain of delays in medical treatment or request different medical treatment, prisoners must overcome a much greater threshold in order to state and/or succeed upon such a § 1983 claim.

On the face of Plaintiff's Complaint, it is obvious that he has not identified any "serious medical need." Common sense alone dictates that any inmate alleging inadequate medical attention following a physical altercation must identify some type of injury that mandates some form of medical treatment. Plaintiff's medical records further support the conclusion that, as of November 23, 2006, Plaintiff did not exhibit any condition that required further treatment and/or was so "obvious that even a lay person would easily recognize the necessity for a doctor's attention." See e.g. Farrow, 320 F. 3d at 1243 (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F. 3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)). Plaintiff submitted sick call request forms complaining of continuing pain and discomfort, but there is no evidence that any of the conditions identified by Plaintiff required any specific medical treatment or that any of his

complaints related to any conditions posing a serious risk to Plaintiff.   (Leverette Aff. at ¶ 5; PHS011-13).  Even in his Complaint, Plaintiff fails to identify any medical condition suffered by him which posed any substantial threat to him and/or required immediate medical attention as of November 23, 2006.  In short, bruises and/or scrapes hardly rise to level of acuity required to state a § 1983 claim and actually constitute the type of *de minimus* conditions that do not satisfy the objective component of the deliberate indifference standard.

Moreover, there is absolutely no evidence of any deliberate indifference on the part of either Dulaney or Leverette.  There is no evidence that Plaintiff ever requested any treatment of Dulaney or Leverette.  There is no evidence that Dulaney or Leverette ever refused to provide any treatment to Dulaney or Leverette.  There is no evidence that Dulaney or Leverette should have provided any specific medical attention to Plaintiff, but refused.   There is no evidence that Plaintiff ever notified Dulaney or Leverette of any serious medical need.  There is no evidence that Dulaney or Leverette ever displayed or acted with the callous, intentional disregard of Plaintiff required for Plaintiff to maintain a claim against them in this action.  Accordingly, there is simply no basis for Plaintiff to maintain a claim against Dulaney or Leverette.

### C.   PLAINTIFF'S COMPLAINT IS BARRED BY THE PRISON LITIGATION REFORM ACT.

#### 1.   PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

42 U.S.C. §1997e(a) of the Prison Litigation Reform Act ("PLRA") mandates that "[n]o action may be brought with respect to prison conditions[7] under section 1983 of this title, or any

---

[7]     The PLRA does not define "prison conditions."  See 42 U.S.C. § 1997e.  Nevertheless, 18 U.S.C. §3626(g)(2) defines a "civil action with respect to prison conditions" as any civil action arising under federal law "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison."  The Eleventh Circuit has relied upon this definition of "prison conditions" in applying the PLRA to cases before it. See

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).[8]  Any remedy available under § 1983 before this Court is not available unless and until Plaintiff utilizes the grievance process available within the correctional system.  See e.g. Brown v. Sikes, 212 F. 3d 1205, 1207 (11th Cir. 2000); Miller v. Tanner, 196 F. 3d 1190, 1193 (11th Cir. 1999); Alexander v. Hawk, 159 F. 3d 1321, 1325 (11th Cir. 1998); see also Higginbottom v. Carter, 223 F. 3d 1259, 1261 (11th Cir. 2000) (holding that invoking the grievance process is "a pre-condition to filing an action in federal court."); A.N.R. v. Caldwell, 111 F. Supp. 2d 1294, 1297-99 (M.D. Ala. 2000) (dismissing prisoner's complaint for failure to exhaust administrative remedies through the available grievance process).  The Supreme Court wrote in Porter v. Nussle, "exhaustion is now required for all 'action[s] . . . brought with respect to prison conditions,' whether under § 1983 or 'any other Federal law.'" 534 U.S. 516, 524,  (2002).

In Alexander v. Hawk, 159 F. 3d 1321, 1328 (11th Cir. 1998) the Court noted:

> In summary we conclude that Section 1997 e(a) requires Alexander to submit his claims for monetary and injunctive relief to the [Federal Bureau of Prisons] available prison grievance program, even if the relief offered by the program does not appear

---

Higginbottom v. Carter, 223 F. 3d 1259 (11th Cir. 2000).  It is incontrovertible that Plaintiff's allegations in this case relate solely to the "conditions of [his] confinement" at Kilby and, as such, trigger the application of the PLRA.

[8]    The PLRA's exhaustion requirement applies to all prisoner suits filed after April 26, 1996. See Higginbottom v. Carter, 223 F. 3d 1259 (11th Cir. 2000); Alexander v. Hawk, 159 F. 3d 1321 (11th Cir. 1998).  This requirement was specifically intended to :

> afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case . . . [because i]n some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation . . . [and i]n other instances, the internal review might 'filter out some frivolous claims.'

Porter v. Nussle, 534 U.S. 516, 524-525 (2002)(citations omitted).

> to be "plain, speedy, and effective," before filing those claims in federal court. The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement.

According to the Eleventh Circuit, a prisoner's claims must be dismissed under Rule 12(b)(1) or Rule 12(b)(6) of the <u>Federal Rules of Civil Procedure</u> if he has failed to exhaust his administrative remedies. <u>Chandler</u>, 379 F. 3d at 1286.

There can be no dispute that Nurse Dulaney and Nurse Leverette maintained a well-established, widely publicized grievance process within the correctional facilities in Alabama, including Kilby. (Dulaney Aff. at ¶¶ 6-7). Likewise, there can be no dispute that Plaintiff was aware of the availability of this administrative grievance process. (PHS022-23). More importantly, there can be no dispute that Plaintiff failed to demonstrate that he availed himself of the full grievance process or pursued his complaints through the entire grievance process at Kilby. (<u>Id.</u>). By failing to utilize procedures available to him at Kilby, of which he was aware, Plaintiff failed to exhaust the administrative remedies available to him as required by the PLRA. As such, Plaintiff's Complaint is premature.

2. **PLAINTIFF FAILED TO IDENTIFY ANY PHYSICAL INJURY.**

42 U.S.C. § 1997e(e) provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit wrote in <u>Napier v. Preslicka</u>, "[t]his statute is intended to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." 314 F. 3d 528, 532 (11th Cir. 2002)(citing <u>Harris v. Garner</u>, 216 F.3d 970, 976-979 (11th Cir. 2000)(<i>en banc</i>)). When an inmate characterizes his claims for "mental

and emotional injury[,] . . . he [does] not allege physical injury [and] . . . is not entitled to compensatory relief." <u>Boxer X v. Donald</u>, 2006 WL 463243, *2 (11th Cir. 2006)(*slip opinion*); <u>see also</u> <u>Hughes v. Lott</u>, 350 F.3d 1157, 1159 (11th Cir. 2003)(holding claims for "mental anguish, humiliation and emotional distress . . . were barred under 42 U.S.C. § 1997e(e)."); <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312-1313 (11th Cir. 2002)(concluding, "a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." (other citations omitted)). Plaintiff's Complaint does not identify any injury of any kind incurred by him as a result of the alleged acts and/or omissions of Dulaney and/or Leverette.  Furthermore, Plaintiff specifically admits in his "RELIEF SOUGHT" section that the only relief sought from these two individuals relate to "pain and suffering." (Complaint at p. 11)  Plaintiff's claims improperly rely upon "mental or emotional injury" as the basis of his claims against Dulaney and Leverette and, as such, his claims directly contravene the requirements of the Prison Litigation Reform Act and should be dismissed.

## VI.    <u>CONCLUSION</u>

Based on the foregoing facts and legal arguments, Plaintiff is not entitled to maintain any claim against Nurse Dulaney and Nurse Leverette based upon the facts alleged in the Complaint.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JODY EDWIN GRIFFITH, #249169,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:07-CV-00749** |
| | ) | |
| **GARY ANDERSON, OFFICER** | ) | |
| **PETERSON, ALFREDA DULANEY,** | ) | |
| **AND HERBERT LEVERETTE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ANSWER OF DEFENDANTS
ALFREDA DULANEY AND HERBERT LEVERETTE**

COME NOW, Defendants NURSE ALFREDA DULANEY ("Nurse Dulaney") and NURSE HERBERT LEVERETTE ("Nurse Leverette") and for their Answer to the Complaint filed by Plaintiff JODY EDWIN GRIFFITH ("Plaintiff"), state as follows:

**FACTUAL ALLEGATIONS**

1.      In response to the statements made by Plaintiff in section I of his Complaint regarding "PREVIOUS LAWSUITS," Nurse Dulaney and Nurse Leverette state that they are without knowledge or information sufficient to form a belief as to the truth of the averments alleged and, as such, deny the allegations in this section and demand strict proof thereof.

2.      In response to section II of Plaintiff's Complaint, Nurse Dulaney and Nurse Leverette admit Plaintiff was incarcerated at the Kilby Correctional Facility ("Kilby") on November 23, 2006, and was subsequently transferred to Limestone Correctional Facility. Except as admitted above, Nurse Dulaney and Nurse Leverette deny each and every remaining allegation in section II of Plaintiff's Complaint and demand strict proof thereof.

3.    In response to section III of Plaintiff's Complaint, Nurse Dulaney and Nurse Leverette deny that any of the named Defendants violated Plaintiff's constitutional rights based upon any medical condition suffered by Plaintiff during his incarceration at Kilby.

4.    Nurse Dulaney and Nurse Leverette deny the allegations asserted in sections IV and V of Plaintiff's Complaint and demand strict proof thereof.

5.    Nurse Dulaney and Nurse Leverette deny Plaintiff is entitled to any relief including any relief alleged in section IV of his Complaint.

6.    In response to the allegations asserted in "PRELIMINARY STATEMENT" submitted with Plaintiff's Complaint, Nurse Dulaney and Nurse Leverette state as follows:

a.    To the extent that the allegations asserted in paragraph 1 of Plaintiff's Preliminary Statement relate solely to his claims against various correctional officers and/or officials, no response is required of Nurse Dulaney or Nurse Leverette.  However, to the extent that the allegations asserted in paragraph 1 of Plaintiff's Preliminary Statement relate in any way to any claims against Nurse Dulaney or Nurse Leverette, Nurse Dulaney and Nurse Leverette deny such allegations and demand strict proof thereof.

b.    Nurse Dulaney and Nurse Leverette deny the allegations asserted in paragraph 2 of Plaintiff's Preliminary Statement and demand strict proof thereof.

c.    Nurse Dulaney and Nurse Leverette admit the allegations asserted in paragraph 3 of Plaintiff's Preliminary Statement.

d.    In response to the allegations asserted in paragraphs 4 and 5 of Plaintiff's Preliminary Statement, Nurse Dulaney and Nurse Leverette state that they are without knowledge or information sufficient to form a belief as to the truth of the averments alleged and, as such, deny the allegations in this section and demand strict proof thereof.

e.     Nurse Dulaney and Nurse Leverette admit the allegations asserted in paragraph 6 of Plaintiff's Preliminary Statement.

f.     Nurse Dulaney and Nurse Leverette deny the allegations asserted in paragraph 7 of Plaintiff's Preliminary Statement and demand strict proof thereof.

g.     In response to the allegations asserted in paragraphs 8 through 27 of Plaintiff's Preliminary Statement, Nurse Dulaney and Nurse Leverette state that they are without knowledge or information sufficient to form a belief as to the truth of the averments alleged and, as such, deny the allegations in this section and demand strict proof thereof.

h.     In response to the allegations asserted in paragraph 28 of Plaintiff's Preliminary Statement, Nurse Dulaney and Nurse Leverette deny that Plaintiff removed his pants during this initial evaluation and demand strict proof thereof.  Nurse Dulaney and Nurse Leverette admit each and every remaining allegation in paragraph 28 of Plaintiff's Preliminary Statement.

i.     In response to the allegations asserted in paragraph 29 of Plaintiff's Preliminary Statement that Nurse Dulaney asked Plaintiff "What happened here?," Nurse Dulaney and Nurse Leverette admit this allegation.  Except as expressly admitted herein above, Nurse Dulaney and Nurse Leverette deny each and every remaining allegation in paragraph 29 of Plaintiff's Preliminary Statement and demand strict proof thereof.

j.     Nurse Dulaney and Nurse Leverette admit the allegations asserted in paragraph 30 of Plaintiff's Preliminary Statement.

k.     In response to the allegations asserted in paragraph 31 of Plaintiff's Preliminary Statement that Nurse Leverette asked Plaintiff "What's wrong?," Nurse Dulaney and Nurse Leverette admit this allegation.  Except as expressly admitted herein above,  Nurse

Dulaney and Nurse Leverette deny each and every remaining allegation in paragraph 31 of Plaintiff's Preliminary Statement and demand strict proof thereof.

      l.    In response to the allegations asserted in paragraph 32 of Plaintiff's Preliminary Statement that Plaintiff was asked to identify his injuries, Nurse Dulaney and Nurse Leverette admit this allegation. Except as expressly admitted herein above, Nurse Dulaney and Nurse Leverette deny each and every remaining allegation in paragraph 32 of Plaintiff's Preliminary Statement and demand strict proof thereof.

      m.    Nurse Dulaney and Nurse Leverette deny the allegations asserted in paragraph 33 of Plaintiff's Preliminary Statement and demand strict proof thereof.

      n.    In response to the allegations asserted in paragraphs 34 through 36 of Plaintiff's Preliminary Statement, Nurse Dulaney and Nurse Leverette state that they are without knowledge or information sufficient to form a belief as to the truth of the averments alleged and, as such, deny the allegations in this section and demand strict proof thereof.

      o.    In response to the allegations asserted in paragraph 37 of Plaintiff's Preliminary Statement that Nurse Leverette conducted a second evaluation of Plaintiff on November 23, 2006, Nurse Dulaney and Nurse Leverette admit this allegation. Except as expressly admitted herein above, Nurse Dulaney and Nurse Leverette state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining averments alleged in this paragraph and, as such, deny the allegations in this paragraph and demand strict proof thereof.

      p.    Nurse Dulaney and Nurse Leverette deny the allegations asserted in paragraph 38 of Plaintiff's Preliminary Statement and demand strict proof thereof.

q.    In response to the allegations asserted in paragraphs 39 through 44 of Plaintiff's Preliminary Statement, Nurse Dulaney and Nurse Leverette state that they are without knowledge or information sufficient to form a belief as to the truth of the averments alleged and, as such, deny the allegations in this section and demand strict proof thereof.

r.    Nurse Dulaney and Nurse Leverette deny the allegations asserted in paragraph 45 of Plaintiff's Preliminary Statement and demand strict proof thereof.

s.    In response to the allegations asserted in paragraphs 46 through 50 of Plaintiff's Preliminary Statement, Nurse Dulaney and Nurse Leverette state that they are without knowledge or information sufficient to form a belief as to the truth of the averments alleged and, as such, deny the allegations in this section and demand strict proof thereof.

t.    Nurse Dulaney and Nurse Leverette deny the allegations asserted in paragraph 51 of Plaintiff's Preliminary Statement and demand strict proof thereof.

u.    Nurse Dulaney and Nurse Leverette deny that Plaintiff is entitled to any of the relief identified by Plaintiff in the "Relief Sought" section of his Preliminary Statement.

## AFFIRMATIVE AND OTHER DEFENSES

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred by the doctrine of contributory negligence and/or last clear chance.

### Third Defense

Plaintiff's claims are barred by the doctrine of assumption of risk.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of laches.

24

## Fifth Defense

Plaintiff's claims are barred by the statute of limitations.

## Sixth Defense

Plaintiff's claims are barred by the doctrine of waiver.

## Seventh Defense

The Court lacks subject matter jurisdiction over this dispute.

## Eighth Defense

This Court is the improper venue in which to assert this action.

## Ninth Defense

Plaintiff lacks standing to bring this action.

## Tenth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

## Eleventh Defense

Plaintiff's claims are barred by the doctrine of qualified immunity.

## Twelfth Defense

Plaintiff's claims are barred by the doctrine of sovereign immunity.

## Thirteenth Defense

Plaintiff's claims are barred by the doctrine of estoppel.

## Fourteenth Defense

Plaintiff's claims are barred by the doctrine of *res judicata* and/or collateral estoppel.

## Fifteenth Defense

Plaintiff's claims are barred, in whole or in part, because of his failure to mitigate damages.

**Sixteenth Defense**

Nurse Dulaney and Nurse Leverette aver that the wrongs and damages alleged by Plaintiff were caused solely by the acts and/or omissions of person and/or entities for whom or which Nurse Dulaney and Nurse Leverette are not responsible.

**Seventeenth Defense**

Plaintiff's claims are barred because Nurse Dulaney and Nurse Leverette did not breach any duty allegedly owed to Plaintiff.

**Eighteenth Defense**

Plaintiff's claims are barred because there is no causal relationship, legal or proximate, between any actions or failures to act by Nurse Dulaney and Nurse Leverette and the Plaintiff's alleged injuries and damages.

**Nineteenth Defense**

Plaintiff's claims are barred because of the existence of superseding, intervening causes.

**Twentieth Defense**

Plaintiff's claims are barred because of the lack of damages suffered due to any of the alleged wrongs asserted against Nurse Dulaney and Nurse Leverette.

**Twenty-First Defense**

Plaintiff has failed to exhaust or attempt to exhaust administrative remedies.  42 U.S.C. § 1997e (a) (2005).

**Twenty-Second Defense**

Plaintiff's claims are barred because the action asserted is "frivolous, malicious, and fails to state a claim upon which relief can be granted."  42 U.S.C. § 1997e(c)(1) (2005).

**Twenty-Third Defense**

Plaintiff's claims are barred because the injunctive relief sought is not sufficiently narrowly drawn. 18 U.S.C. § 3626(a)(1)(A) (2005).

**Twenty-Fourth Defense**

Plaintiff's claims are barred because Nurse Dulaney and Nurse Leverette did not act with deliberate indifference. Estelle v. Gamble, 429 U.S. 97 (1976).

**Twenty-Fifth Defense**

Plaintiff's claims are barred because he is seeking to question a medical judgment via 42 U.S.C. § 1983.

**Twenty-Sixth Defense**

To the extent Plaintiff seeks to recover any attorneys' fees, Nurse Dulaney and Nurse Leverette object to any and all such requests for fees that are not asserted in the Complaint or otherwise approved by court order.

**Twenty-Seventh Defense**

Plaintiff's claims for punitive damages violate Nurse Dulaney and Nurse Leverette's United States and Alabama constitutional protections from, including without limitation, excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the law.

**Twenty-Eighth Defense**

Nurse Dulaney and Nurse Leverette reserve the right to assert other defenses as discovery proceeds.

/s/ William R. Lunsford
_____
One of the Attorneys for Alfreda Dulaney and Herbert Leverette

27

William R. Lunsford
Maynard, Cooper & Gale, P.C.
655 Gallatin Street
Huntsville, Alabama 35801
Telephone:  (256) 551-0171
Facsimile: (256) 512-0119
Email: blunsford@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and mailed via regular U.S. mail to the following:

Jody Edwin Griffith (*via U.S. mail*)
AIS 249169
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL 35749


Benjamin Howard Albritton (*via electronic mail*)
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130-0152

/s/ William R. Lunsford
Of Counsel

# Exhibit "A"
Alfreda Dulaney's Affidavit

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JODY EDWIN GRIFFITH, #249169,      )
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   )
GARY ANDERSON, OFFICER             )    Civil Action No.: 2:07-cv-00749-MEF-TFM
PETERSON, ALFREDA DULANEY AND      )
HERBERT LEVERETTE,                 )
                                   )
            Defendants.            )

## AFFIDAVIT OF ALFREDA DULANEY, LPN

STATE OF ALABAMA        )
                        )
COUNTY OF MONTGOMERY    )

Before me, the undersigned Notary Public, personally appeared ALFREDA DULANEY, LPN, who, after being duly sworn, states as follows:

1.    My name is Alfreda Dulaney. I am over the age of nineteen (19) years and have personal knowledge of the information contained in this affidavit.

2.    I have been a licensed practical nurse in Alabama since May of 2000. I have been employed at Kilby Correctional Facility as a member of its medical staff since December of 2003. As of November 1, 2007, the private medical provider responsible for the medical operations at Kilby changed and my employment changed from one provider to another.

3.    Jody Edwin Griffith was at one time incarcerated at Kilby and a true and correct copy of certain excerpts from his medical record jacket, including his mental health records and grievances, are attached hereto as Exhibit "A."

4.    I do not recall when I was first notified of the lawsuit filed by Mr. Griffith against me. At some point, I was verbally notified by my supervisor at Kilby that this lawsuit had been

filed and was informed that my prior employer would be notified of the filing of this action and my former employer would make the necessary arrangements for the defense of this lawsuit. I, however, was not involved in notifying my former employer of this action and am unaware of the circumstances surrounding the notification of my former employer and the events which transpired after my employer was notified. I was notified of the retention of counsel on my behalf at the end of January, 2008.

5.    As of the date of this affidavit, I have not received a copy of the summons and complaint from a special process server or at my residence. I have not at any time authorized anyone to accept service of process on my behalf, including Paul Rogers and Bruce Vermillyer who apparently signed for mail addressed to me. In fact, I do not even know either of these individuals. I do not recall ever receiving the order from the Court directing me to show cause why I had not appeared in this case or filed anything in response to Mr. Griffith's Complaint. I have not attempted to evade in any way service of process or service of any other documents in this case.

6.    When an inmate has a non-emergency medical or health problem and/or complaint, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff at Kilby and/or request medical treatment for this problem. The sick call request process is well-known at Kilby and is utilized by inmates at Kilby on a daily basis. When an inmate first arrives at Kilby, he is taken to the Health Care Unit to be processed into the system and receives an orientation as to the availability of medical services at the facility as well as the procedures for obtaining medical care. During this orientation, the medical staff gives each inmate an information sheet and verbally goes through the sheet with newly-arriving inmates, informing them how to utilize the sick call request form process. Sick

call request forms are available in the Health Care Unit at the shift commander's station or may be obtained from the Alabama Department of Corrections ("ADOC") officer in each dorm at Kilby. An inmate making a sick call request is required to complete the top portion of the sick call request form (stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature) and submit the sick call request form by placing it in a locked box located outside the facility's kitchen (i.e., chow hall). The sick call request forms are removed from the locked box each day and brought to the Health Care Unit. Upon retrieving the sick call request forms, the medical staff compiles a list of inmates having submitted a sick call request form, which is sent to the various dorms at Kilby. Kilby conducts sick call five (5) times per week, Monday through Friday excluding holidays or unexpected emergencies. Sick call begins at 5:00 a.m. and lasts as long as required to examine all the inmates who report to sick call. Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints at the time they are summoned to the Health Care Unit for sick call. The number of inmates reporting to sick call each day varies between approximately ten (10) and thirty-five (35). The nurse conducting sick call takes reporting inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Kilby and they are examined the same day per the medical provider. If the inmate fails to report to sick call when summoned, this is often indicated in the sick call request form because it is left blank by the medical staff. If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-threatening, the medical staff will immediately have the inmate brought to the infirmary (located within the Health Care Unit) and the inmate will be examined and treated by a medical provider.

7.    The medical staff at Kilby utilizes a well-established two-step grievance procedure for any inmate who wishes to voice a complaint regarding any medical treatment he has sought or received during his incarceration at Kilby. The initial orientation process at Kilby includes educating inmates as to the availability of the grievance process. The existence of Kilby's grievance procedure is well-known among the prison population, as indicated by the fact that the Health Services Administrator ("HSA") at Kilby receives inmate requests and/or inmate grievances on a daily basis. The physicians, nurse practitioners, nurses and other medical personnel at Kilby attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted.

8.    The grievance process is initiated when an inmate submits an informal Inmate Grievance form to the HSA through the institutional mail system. After reviewing the Inmate Grievance and the inmate's medical chart, the HSA then provides a written response within five (5) days of receipt of the Inmate Grievance. The HSA's written response to an Inmate Grievance is included on the bottom portion of the same form containing an inmate's Inmate Grievance. Below the portion of the form designated for the "Response," the following notation appears:

IF YOU WISH TO APPEAL THIS REVIEW YOU MAY REQUEST A <u>GRIEVANCE APPEAL</u> FORM FROM THE HEALTH SERVICES ADMINISTRATOR. RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEALTH SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.

As stated in the Inmate Grievance forms, the second step of the grievance process involves the submission of a formal Grievance Appeal, at which time the inmate will be brought in for one-on-one communication with the HAS and/or the Director of Nursing. A written response to a formal Grievance Appeal is provided within five (5) days of receipt. Inmate Grievance and Grievance Appeal forms are available from the medical staff and correctional

officers at Kilby. Inmates are instructed to place completed Inmate Grievance and Grievance Appeal forms in the sick call boxes located outside the chow hall. When picked up by Health Care Staff, Inmate Grievance and Grievance Appeal forms are delivered to the HSA by the medical records clerk or administrative assistant. The HSA reviews the Grievances daily, provide a written response within five (5) days at the bottom of the form and return a copy of the completed forms to the inmate. The medical staff at Kilby encourages inmates who have complaints about the medical care they have sought or received at Kilby to utilize this grievance process.

As of the date of this affidavit, I have not identified any grievances filed by Mr. Griffith which relate to the events described in his complaints.

9.    I recall assisting the initial evaluation of Mr. Griffith on November 23, 2006, after an altercation between Mr. Griffith and members of the correctional staff at Kilby. My assistance was limited to taking Mr. Griffith's vital signs. Mr. Herbert Leverette took primary responsibility for examining Mr. Griffith at that time and documenting his findings and observations. Mr. Griffith was extremely agitated and was not cooperative at the time of our examination of him. While I do recall asking Mr. Griffith, "What happened?" or something to that effect, the conversation described in Mr. Griffith's Complaint did not occur as described. During my interaction with Mr. Griffith on November 23, 2006, he did not request any medical treatment or complain of any medical conditions other than minor scrapes and bruises. I did not see any sign or indication on November 23, 2006, that Mr. Griffith was experiencing any serious medical condition or required any immediate medical attention of any kind. Since November 23, 2006, I have not interacted with Mr. Griffith in any way and have not been notified of any

medical complaints voiced by Mr. Griffith at any time since that date. I did not ignore any of Mr. Griffith's complaints and have not refused to provide him with necessary medical attention.

Further affiant saith not.

_____

Alfreda Dulaney, LPN

**SWORN TO and SUBSCRIBED** before this the ___5th___ day of March, 2008.

_____

Notary Public

My Commission Expires: _April 4, 2011_

(SEAL)

# Exhibit "B"
Herbert Leverette's Affidavit

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JODY EDWIN GRIFFITH, #249169, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) |
| GARY ANDERSON, OFFICER | )    Civil Action No.: 2:07-cv-00749-MEF-TFM |
| PETERSON, ALFREDA DULANEY AND | ) |
| HERBERT LEVERETTE, | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT OF HERBERT LEVERETTE, LPN

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF MONTGOMERY | ) |

Before me, the undersigned Notary Public, personally appeared HERBERT LEVERETTE, LPN, who, after being duly sworn, states as follows:

1.    My name is Nurse Herbert Leverette.  I am over the age of nineteen (19) years and have personal knowledge of the information contained in this affidavit.

2.    I began working at Kilby Correctional Facility approximately five years ago as a nurse assistant.  Approximately two years ago, I received my license to practice as a licensed practical nurse and have been working in that capacity at Kilby since becoming licensed.  As of October 31, 2007, the private medical provider responsible for the medical operations at Kilby changed and my employment changed from one provider to another.

3.    Jody Edwin Griffith was at one time incarcerated at Kilby and my interaction with Mr. Griffith was limited to one limited occasion.

4.    On November 23, 2006, Mr. Griffith reported to the Health Care Unit at Kilby following an altercation between Mr. Griffith and the correctional staff at Kilby.  The

correctional officers escorting Mr. Griffith requested that we conduct an examination of Mr. Griffith prior to his placement in segregation. When I began my evaluation of Mr. Griffith, he was extremely angry and upset. He did not cooperate in any fashion in the examination and, ultimately, I could not conduct a full physical examination due to his agitated state. At that time, I was able to conduct a complete visual examination of Mr. Griffith because of Mr. Griffith's lack of cooperation and Nurse Alfreda Dulaney obtained Mr. Griffith's vital signs. Mr. Griffith was moved to segregation where the officers later called me again to examine Mr. Griffith after he had calmed down. At that time, I completed a second "body chart" recording my observations of the scrapes and bruises which were present on Mr. Griffith. In my opinion, none of the scrapes or bruises required stitches or further medical attention at that time. Furthermore, Mr. Griffith did not appear to be in any significant pain or distress which would indicate that his injuries were life-threatening or required any medical attention. I instructed Mr. Griffith to submit a sick call request form if he needed any further attention of any kind.

5.    I was not involved in any care rendered to Mr. Griffith after November 23, 2006. Mr. Griffith submitted a sick call request form complaining of jaw pain, headaches and left ear pain. He reported to sick call on November 27, 2006, and was referred to the nurse practitioner for further evaluation. During an examination by the nurse practitioner on November 27, 2006, Mr. Griffith only complained of ear pain and headaches and he received prescription for Motrin. He did not voice any complaints of left thigh pain.

Mr. Griffith appeared at sick call again on December 4, 2006, complaining of left thigh pain. He was referred to the nurse practitioner for further evaluation. An evaluation of Mr. Griffith on December 4, 2006, by the nurse practitioner at Kilby indicated that all of his complaints had been resolved except for a bruise on his left thigh. However, the nurse

practitioner noted that this left thigh bruise did not appear to impact Mr. Griffith's gait or movement. The nurse practitioner at Kilby ordered an x-ray of Mr. Griffith's left thigh, but this x-ray did not occur before Mr. Griffith was transferred to Limestone Correctional Facility. In his transfer documentation, the medical staff at Kilby notified the medical staff at Limestone of this outstanding order and recommended that they proceed with the x-ray if Mr. Griffith's complaints continued. After his transfer, Mr. Griffith did not submit any sick call request forms requesting further evaluation or treatment of his left thigh.

6.      While I do recall inquiring generally about what was wrong with Mr. Griffith and what happened during the altercation (which were important questions for my assessment of his condition), I simply did not make the statements regarding "siding" with correctional officers, not documenting his injuries or my examination of Mr. Griffith before lunch. During my interaction with Mr. Griffith on November 23, 2006, he did not request any medical treatment or complain of any medical conditions other than minor scrapes and bruises. I did not see any sign or indication on November 23, 2006, that Mr. Griffith was experiencing any serious medical condition or required any immediate medical attention of any kind. Since November 23, 2006, I have not interacted with Mr. Griffith in any way and was not been notified of any medical complaints voiced by Mr. Griffith at any time since that date until I recently reviewed his medical records. I did not ignore any of Mr. Griffith's complaints and have not refused to provide him with necessary medical attention.

7.      As of the date of this affidavit, I have not received a copy of the summons and complaint from a special process server or at my residence. I have not at any time authorized anyone to accept service of process on my behalf, including Paul Rogers and Bruce Vermillyer who apparently signed for mail addressed to me. In fact, I do not even know either of these

individuals.  I do not recall ever receiving the order from the Court directing me to show cause

why I had not appeared in this case or filed anything in response to Mr. Griffith's Complaint.   I

have not attempted to evade in any way service of process or service of any other documents in

this case.

Further affiant saith not.

Herbert Leverette, LPN

SWORN TO and SUBSCRIBED before this the 3 day of March, 2008.

Notary Public
My Commission Expires My Commission Expires 5/9/2011

# Exhibit "C"

Plaintiff Jody Edwin Griffith's Medical Records



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PHYSICIANS' ORDERS

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / | |
| ALLERGIES: | |
| Use Last    Date  /  / | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: *Griffith, Jody* 249169 | DIAGNOSIS (If Chg'd) CTM 4 MG ī bid × 5 days Guifausin 600 mg ī bid × 5 days Nasal chron spray īī |
|---|---|
| D.O.B. 9/11/71 ALLERGIES: NKDA | *noted* |
| Use Fourth    Date 3/6/07 | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: *Griffith, Jody* 249169 | DIAGNOSIS (If Chg'd) CTM 4 MG ī bid × 7 days MOTRIN 200 MG īīī TIAP 7 days |
|---|---|
| D.O.B. 9/11/71 ALLERGIES: NKDA | *noted* KSDR 1-10-07 |
| Use Third    Date 1/1/07 | Charles Hooper CRNP ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Griffith, Jody 249169 | DIAGNOSIS (If Chg'd) ① X-RAY ® femur (distal)   R/O ABN ② Flu OPC ī wk (1 om) |
|---|---|
| D.O.B. 9/11/71 ALLERGIES: NKDA | 12/4/06 1450 pm noted |
| Use Second    Date 12/4/06 | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Griffith, Jody 249169 | DIAGNOSIS ① Bactrim DS ī po BID × 14d ② Motrin 600 mg po BID × 14d PRN ③ Flu OPC ī wk (1 om Re-v) |
|---|---|
| D.O.B. 9/11/71 ALLERGIES: NKDA | 11/27/06 230 pm noted |
| Use First    Date 11/27/06 | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Griffith, Jody                         D.O.B.:   /   / |
|-----------|------------------------------------------------------------------------|

12/4/06
1310

Pt. c/o bruise to Ⓛ posterior thigh
x 11 days. + other c/o

VSS ; Afebrile

HEENT - Ⓛ TM is much less erythematous
c̄ less edema now but + 
entirely Resolved ; much improved
+ other Changes

Ⓛ posterior thigh with large bruise
with purple edges and yellow center;
tender to palpation with hardened area
to center ; he is Ambulating on it
with apparent ease ; this is his
first complaint (that I am aware of)
About his leg

1) Ⓛ leg pain
  - X-ray
  - Cont. motrin
  - F/u ī wk / PRN

2) Ⓛ OM
  - Cont. present plc
  - F/u as sched

Ē: TX plan

**Complete Both Sides Before Using Another Sheet**

PHS002



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: | Griffith, Jody | D.O.B.: / / |

| 11/27/06 | Pt. c/o Ⓛ ear pain c̄ HA x ~ 2 wks |
| 1345 | VSS; Afebrile; ∅ other c/o |
| | HEENT - Head/Scalp - WNL |
| | TM's - Ⓡ TM - WNL |
| | Ⓛ TM - Red/bulging |
| | throat - clean |
| | nodes - negative |
| | PERRLA ; EOM I |
| | * Consulted c̄ Dr. Robbins |
| | 1) Ⓛ OM |
| | - Bactrim / motrin x 14d |
| | - ↑ fluids / ∅ smoke |
| | - F/u OPC 2 wk for Re-√ c̄ PRN |
| | - this does not look to be the result of |
| | any trauma - there are no clinical signs |
| | of obvious trauma to the head/scalp |
| | c̄: Tx plan |
| | [signature] |

60111 (5/85)

**Complete Both Sides Before Using Another Sheet**

PHS003



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Jody Griffith_ _____ Date of Request: _07-25-07_
ID # _249169_ _____ Date of Birth: _9-11-71_ Location: _L.C.F E-18B_
Nature of problem or request: _I am requesting copies of forms F-15_
_(Bodychart) documented on Nov 23, 2006 (there were two)_
_As well as the complete Sick Call Request form dated Nov. 24,2006 & Dec. 2, 20_
_in its entirety including medication ordered from my medical file._
_Jody Griffith_
Signature

**DO NOT WRITE BELOW THIS LINE**

Date: _7/26/07_
Time: _1 Pm_ ___ AM PM
Allergies: _NKA_

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective** (V/S): **T:** _____ **P:** _____ **R:** _____ **BP:** _____ **WT:** _____

**(A)ssessment:**

**(P)lan:** _Patient Education on policy + procedure._
_Instructed to write request to Admin. Inmate Voiced_
_understanding._

Refer to:  MD/PA  Mental Health  Dental  Daily Treatment     Return to Clinic PRN
CIRCLE ONE
Check One:  ROUTINE ( )     EMERGENCY ( )
If Emergency was PHS supervisor notified:   Yes ( )     No ( )
Was MD/PA on call notified:   Yes ( )     No ( )

_V. Graham LPN_
*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS004



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Jody Griffith_          Date of Request: _6-25-07_
ID # _249169_          Date of Birth: _9-11-71_  Location: _E-18B_
Nature of problem or request: _Eye problems    Problems with gaining_
_weight_
_____

_Jody Griffith_
                                    Signature

### DO NOT WRITE BELOW THIS LINE
_____

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective**  (V/S): T: _97.5_   P: _88_   R: _16_   BP: _118/60_   WT: _145_

**(A)ssessment:** c/o having trouble c̄ vision in Sunglight
Normally wears dark lenses to protect
eyes from U.V rays, eye Doctor referral,

**(P)lan:** wt loss RT lack of appetite.

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment     Return to Clinic PRN
                                CIRCLE ONE
Check One:  ROUTINE ( )     EMERGENCY ( )
        If Emergency was PHS supervisor notified:   Yes ( )   No ( )
        Was MD/PA on call notified:   Yes ( )   No ( )

_N. Si___ LPN_
                    SIGNATURE AND TITLE

WHITE:   INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002   (1/4)

PHS005



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Jody Griffith_    Date of Request: _5-17-07_
ID # _249169_    Date of Birth: _9-11-71_ Location: _E-Dorm 188_
Nature of problem or request: _Allergies making eyes dry and occasional_
_coughing    Sluth on right bottom eyelid requesting antibiotic_
_drops_

_Jody Diff_
Signature

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective**    (V/S): T: _974_    P: _88_    R: _18_    BP: _109/68_ WT: _150_

**(A)ssessment:** c/o allergies, red eyes, stye to ® eye

**(P)lan:** CTMXR 12mg ‡ po BID        Nasal Crom 1 spray each nostril
Allergy gtts visine Ac —        QID

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment    Return to Clinic PRN
CIRCLE ONE
Check One:  ROUTINE ( )    EMERGENCY ( )
If Emergency was PHS supervisor notified:    Yes ( )    No ( )
Was MD/PA on call notified:    Yes ( )    No ( )

A Simms LPN
*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS006



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Jody Griffith_    Date of Request: _3-2-07_
ID # _249169_    Date of Birth: _9-11-71_ Location: _E-18B_
Nature of problem or request: _My ankles keep swelling._
_Allergies (seasonal) are beginning to bother me with sneezing,_
_coughing, runny eyes and sore throat_

_Jody Griffith_
_Signature_

### DO NOT WRITE BELOW THIS LINE

Date: _3/6/07_
Time: _0850_ AM PM
Allergies: _NKDA_

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Initials _____ |

**(S)ubjective:** C/O ankle swelling.
No runny nose, sneezing, coughing

**(O)bjective (V/S):** T: _98.0°_ P: _70_ R: _16_ BP: _110/78_ WT: _150_
Pale, swollen turbinates
Positive clear nasal drainage
Throat clear, clear drainage
C/O ankle swelling B/L feet

**(A)ssessment:** Allergic Rhinitis

**(P)lan:** OTM C/MG ō 6/6x 7 days                    Pt advised to
Nasal Cream (Nasal) ōō ASPES + Triaxl / Reduce Sodium
Allerfex (W) 60 mg ō 6/d + 7 day                         intake.
Refer to:  MD/PA  Mental Health  Dental  Daily Treatment  (Return to Clinic PRN)
CIRCLE ONE
Check One:  ROUTINE (✓)  EMERGENCY ( )
If Emergency was PHS supervisor notified:  Yes ( )  No ( )
Was MD/PA on call notified:  Yes ( )  No ( )

_SIGNATURE AND TITLE_

WHITE:   INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS007



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

RECEIVED
JAN 0 9 2007

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _Jody Griffith_         Date of Request: _01-  -07_
ID # _249169_              Date of Birth: _09-11-71_  Location: _9-A-18T_
Nature of problem or request: _Sinus problems and other cold symptoms_
_- Problems swallowing_

_Jody Griffith_
Signature

### DO NOT WRITE BELOW THIS LINE

Date: _1/10/07_
Time: _1030_  (AM) PM
Allergies: _NKDA_

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:** c/o "sinus congestion, problems swallow"

**(O)bjective** (V/S): T: _98.6°_   P: _76_   R: _18_   BP: _120/80_   WT: _140_
PERL, swollen turbinates
throat red & clear drainage
clear nasal drainage
c̄ lymphadenopathy
**(A)ssessment:** _RN with___

**(P)lan:** CTM 4mg x 6/6 x 7days
Motrin 200mg TTT x Tab PRN x 3 days

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment   (Return to Clinic PRN)
CIRCLE ONE
Check One: ROUTINE (✓)   EMERGENCY ( )
If Emergency was PHS supervisor notified:   Yes ( )   No ( )
Was MD/PA on call notified:   Yes ( )   No ( )

_Charles D Hoopes, CRN_
*SIGNATURE AND TITLE*

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

*Body Chart*

| ADMISSION DATE | TIME | ORIGINATING FACILITY | |
|---|---|---|---|
| 1/4/07 | AM PM | ☐ SIR ☐ PDL ☐ ESCAPEE _____ | ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT |

**ALLERGIES** NKDA

**CONDITION ON ADMISSION**
☐ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

**VITAL SIGNS: TEMP** 97 **ORAL RECTAL** **RESP.** 16 **PULSE** 96 **B/P** 59/97 **RECHECK IF SYSTOLIC <100> 50** /

**NATURE OF INJURY OR ILLNESS**

S - Body Chart
O - w/m B5 y.o c bruises
or open areas noted
Lungs CTA, bowel sounds
present
A - See Body Chart
P - Medicate prn c/o
E Follow rules and
reg at DOC

| | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION / ____ SUTURES |
|---|---|---|---|---|---|

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE |
|---|---|---|---|
| 1/4/07 | AM PM | ☐ DOC ☐ AMBULANCE | ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| | 1-4-07 | | 1/4/07 | |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Griffith, Jody | 249189 | 9-11-71 | W/M | LCF |

PHS-MD-70007    **(White – Record Copy, Yellow – Pharmacy Copy)**

PHS009

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

DEPARTMENT OF CORRECTIONS
## TRANSFER & RECEIVING SCREENING FORM

RECEIVED: Inmate/Health Record

Institution: _____

Date: _____ Time: _____ AM/PM

RECEIVED FROM:
Institution/Work Release Center/Free-World Hospital

RECEIVING MEDICAL STATUS

[ ] Population

[ ] Infirmary

[ ] Isolation

RELEASED: Inmate/Health Record

Institution: Kilby

Date 1-3-07 Time: 7B AM/PM

RELEASE FROM:
[✓] Primary    [ ] Segregation
[✓] Population  [ ] Mental Health
[ ] Other _____

RELEASE TO:
[✓] DOC    [ ] Infirmary    [ ] Mental Health
LCF

Institution/Work Release Center/Free-World Hospital

ALLERGIES:
NKDA

PHYSICAL EXAMINATION

Date of last exam: 11-9-06

Chest X-Ray Date: _____ Result: _____

PPD Reading 11-10-06 ∅mm

Classification: _____

Limitations: _____

LAB RESULTS - - LAST REPORT

| | Date | Normal | Abnormal |
|---|---|---|---|
| CBC | 11-9-06 | [✓] | [ ] |
| Urinalysis | 11-9-06 | [✓] | [ ] |
| HIV, RPR | 11-9-06 | | |

| | YES | NO |
|---|---|---|
| Wears Glasses/Contacts | | [✓] |
| Dental Prosthesis | [ ] | [ ] |
| Hearing Aide | [ ] | [ ] |
| Other Prosthesis | [ ] | [ ] |

A Simms LPN
Recieving Nurse

CURRENT OR CHRONIC MEDICAL/DENTAL/MENTAL HEALTH PROBLEMS OR COMPLAINTS Pt. c/o (L) leg pain in the Out Patient Clinic on 12/4/06 & CRNP ordered distal (L) femur x-ray to R/O abnormality. Pt F/U in OutPt. clinic about (L) leg pain & (L) leg pain. There is no x-ray on jacket + no documentation of F/U. The (L) leg pain happened p alteration c DOC.

CURRENT MEDICATION - - DOSAGE AND FREQUENCY

no med.'s

MEDICATIONS None [ ] Sent w/ inmate  [ ] Not sent w/ inmate
X-RAY FILM        [ ] Sent w/ inmate  [ ] Not sent w/ inmate
HEALTH RECORD     [✓] Sent w/ inmate  [ ] Not sent w/ inmate
Released to: ADOC

Date: _____ Time: _____ AM/PM

MEDICATIONS   [ ] Received  [ ] Not Received
X-RAY FILM    [ ] Received  [ ] Not Received
HEALTH RECORD [ ] Received  [ ] Not Received
CHART REVIEWED [ ] YES      [ ] NO

Received by: _____
Signature of Receiving Nurse

Date: _____ Time: _____ AM/PM

SCHEDULE FOR CHRONIC CARE CLINIC no CCC

DATE: _____ LAST CLINIC: _____

FOLLOW-UP CARE NEEDED   Date    Time    With Whom - - Location (Sending Nurse)    Date/Appt. Made w/Whom (Rec. Nurse)
[✓] Medical  [ ] Dental    Possibly (L) distal femur x-ray if still having problems.
[ ] Mental Health

| NURSING ASSESSMENT (SENDING NURSE) (Noted from health record documentation) | | Yes | No |
|---|---|---|---|
| HISTORY | Drug Use | | ✓ |
| | Mental Illness | | ✓ |
| | Suicide Attempt | | ✓ |
| | Chronic Care | | ✓ |
| STATUS | Special Diet | | ✓ |
| | Appearance | ✓ | |

OTHER PERTINENT NURSING ASSESSMENT

| NURSING ASSESSMENT (RECEIVING NURSE) (Noted from inmate assessment) | | Yes | No |
|---|---|---|---|
| SKIN | Open Sores | | ✓ |
| | Lice | | ✓ |
| | Edema | | ✓ |
| | Warm & Dry | ✓ | |
| | Cool & Moist | | ✓ |
| CONDITION | Alert | ✓ | |
| | Oriented | ✓ | |
| | Uncooperative | | ✓ |
| | Depressed | | ✓ |

INTAKE

Sick Call Procedures Explained  ✓
Height                          6'3
Weight                         159/97
Blood Pressure
Temperature          97.7     169/97
Pulse Resp.                    161/97
Other _____

Linda Bell RN
Signature of Nurse Completing Assessment (Sending Nurse)

1-3-07
Date

_____
Signature of Intake Screening Nurse (Receiving Nurse)       Date

INMATE NAME (LAST, FIRST, MIDDLE)  Griffith, Jody Edwin

| DOC# | DOB | Race/Sex | FAC |
|---|---|---|---|
| 249169 | 9/11/71 | W/M | KCF |

PHS-MD-70009    **(White - Medical Jacket, Yellow - Transfer Coordinator)**

PHS010

**PHS**

## Nursing Evaluation Tool:                General Sick Call

Facility: Alabama Department of Corrections

Patient Name: Griffith, Jody
                    Last                                    First

Inmate Number: 249169              Date of Birth: 9 / 11 / 71
                                                            MM    DD    YYYY

Date of Report: 12 / 14 / 06        Time Seen: 600  (AM) PM  Circle One
                    MM   DD   YYYY

(1)

_Subjective:_ Chief Complaint(s): Large bruise on back of Lt thigh.

Onset: X 11 days @ Flu Lt EAR

Brief History: 35 40 WM c̄ ∅ significant medical Hx.
(Continue on back if necessary)

☐ Check Here if additional notes on back

_Objective:_ Vital Signs: (As Indicated) T: 97.7  P: 71  RR: 20  B/P: 145/93

Examination Findings: Bruising on back of Lt thigh.
(Continue on back if necessary)

☐ Check Here if additional notes on back

_Assessment:_ (Referral Status)      Preliminary Determination(s): Alt in comfort r/t
  ☐ Referral NOT REQUIRED              above statement
  ☑ Referral REQUIRED due to the following: (Check all that apply)
      ☐ Recurrent Complaint (More than 2 visits for the same complaint)
      ☑ Other:

Comment: You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

_Plan:_ Check All That Apply:
  ☐ Instructions to return if condition worsens.
  ☐ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up. ☐ YES ☐ NO (If NO then schedule patient for appropriate follow-up visits)
  ☐ Other: _____
                    (Describe)
OTC Medications given ☑ NO  ☐ YES (If Yes List): _____

Referral: ☐ NO ☑ YES (If Yes, Whom/Where): B. Adams CRNP        Date for referral: 12/14/06
                                                                                        MM  DD  YYY
Referral Type: ☑ Routine  ☐ Urgent  ☐ Emergent  (if emergent who was contacted?): _____  Time _____

x _Lorraine Graves_                        Name: Lorraine Graves
      Nurses Signature                              Printed

PHS011



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

### PRISON HEALTH SERVICES, INC.
### SICK CALL REQUEST

Print Name: _Jody Griffith_ ___ Date of Request: _12-2-06_
ID # _249169_ ___ Date of Birth: _9-11-71_ Location: _Kilby EB-01_
Nature of problem or request: _Request to see Doctor for large bruise_
_on back of leg. Has been present for ten days and has_
_hard center. I was hit with a baton. Afraid of internal_
_bleeding_

_Jody Griffith_
_Signature_

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective  (V/S):  T:** _____ **P:** _____ **R:** _____ **BP:** _____ **WT:** _____

**(A)ssessment:**

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment        Return to Clinic PRN
CIRCLE ONE
Check One:  ROUTINE ( )    EMERGENCY ( )
  If Emergency was PHS supervisor notified:   Yes ( )    No ( )       _12/4/06_
    Was MD/PA on call notified:   Yes ( )    No ( )

_____
*SIGNATURE AND TITLE*

WHITE:   INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS012



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: Griffith, Jody _____ Date of Request: 11-24-06
ID # 249169 _____ Date of Birth: 9-11-71 _ Location: Kilby
Nature of problem or request: ~~Bad~~ ~~headache~~ ~~JP.~~
Severe pain in jaw, Bad headache, Hurting around my left ear

_Jody Siffth_
*Signature*

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/____
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective**  (V/S): T: _____ P: _____ R: _____ BP: _____ WT: _____

**(A)ssessment:**

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment       Return to Clinic PRN
CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
    If Emergency was PHS supervisor notified:   Yes ( )     No ( )
    Was MD/PA on call notified:   Yes ( )     No ( )

11/27/06

_____
*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS013

PHS

**Nursing Evaluation Tool:**                    General Sick Call

Facility: Alabama Department of Corrections

Patient Name: Griffith, Jody

Inmate Number: 24 9169                    Date of Birth: 9 /11/71
                                                       MM    DD    YYYY

Date of Report: 11 /27/06                 Time Seen: 600 AM/PM Circle One
                MM   DD   YYYY                        35

**Subjective:** Chief Complaint(s): Something is wrong with the Lt
Onset: Side of my head. Hit in head Thursday night.
Brief History: 35 yo WM c̄ ∅ significant medical Hx.
(Continue on back if necessary)

**Objective:** Vital Signs: (As Indicated) T: 98¹ P: 75 RR: 20 B/P: 143/90
Examination Findings: A+O x3 Resp reg c̄ ease VS WNL
(Continue on back if necessary)

**Assessment:** (Referral Status)      Preliminary Determination(s): Alts in comfort r/t
☐ Referral NOT REQUIRED              alone statement
☑ Referral REQUIRED due to the following: (Check all that apply)
    ☐ Recurrent Complaint (More than 2 visits for the same complaint)
    ☐ Other:

**Comment:** You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

**Plan:** Check All That Apply:
☐ Instructions to return if condition worsens.
☐ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up. ☐ YES ☐ NO (If NO then schedule patient for appropriate follow-up visits)
☐ Other:
OTC Medications given ☑ NO ☐ YES (If Yes List):
Referral: ☐ NO ☑ YES (If Yes, Whom/Where):
Referral Type: ☑ Routine ☐ Urgent ☐ Emergent (if emergent who was contacted?): ___ Date for referral: __/__/__
                                                                                    Time

x J Graves
Nurses Signature                          Name: Loraine Graves
                                                Printed

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY Kilby | | ☐ SICK CALL   ☐ EMERGENCY |
|---|---|---|---|---|
| 11 /23 /06 | 9:25 AM/PM | ☐ SIR  ☐ PDL  ☐ ESCAPEE | | ☐ OUTPATIENT |

| ALLERGIES NKA | CONDITION ON ADMISSION |
|---|---|
| | ☑ GOOD  ☐ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA |

| VITAL SIGNS: TEMP 99.3 | ORAL RECTAL | RESP. 20 | PULSE 96 | B/P 140/76 | RECHECK IF SYSTOLIC <100> 50 ___/___ |
|---|---|---|---|---|---|

| NATURE OF INJURY OR ILLNESS | | ABRASION ///| CONTUSION # | BURN xx/xx | FRACTURE Z/Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|---|

S - 2nd body per ADOC

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O - Alert and oriented to person, place, and time. Resp. with ease. Skin warm, dry, and intact. ~~only mini~~ On second exam minor abrasion noted with no bleeding noted as follows. <1cm on 3rd toe Left foot, Left posterior thigh 5cm bruise, 4 cm bruise left lateral hip, 3cm bruise left anterior hip, 3cm bruise left lateral shoulder, 5.5 cm abrasion left interior forearm, small abrasion left wrist, <1cm abrasion left lateral head, <1cm superior left eyebrow, no distress noted

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

**DIAGNOSIS**
A - body chart per ADOC

**INSTRUCTIONS TO PATIENT**
P - Release to ADOC

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | ☑ DOC  ☐ AMBULANCE  ☐ | CONDITION ON DISCHARGE |
|---|---|---|---|---|
| 11 /23 /06 | 9:40 AM/PM | | | ☑ SATISFACTORY  ☐ POOR   ☐ FAIR  ☐ CRITICAL |

| NURSE'S SIGNATURE Averette LPN | DATE 11/23/06 | PHYSICIAN'S SIGNATURE @ 11/27/06 | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Griffith, Jody | 249169 | 9/11/71 | W/M | KCF |

PHS-MD-70007          **(White – Record Copy, Yellow – Pharmacy Copy)**

PHS015

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE 11/23/06 | TIME 10:10 ☐AM ☑PM | ORIGINATING FACILITY KCF ☐ SIR ☐ PDL ☐ ESCAPEE | ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT |
|---|---|---|---|

| ALLERGIES NKA | | O2 Sat 98% | CONDITION ON ADMISSION ☑GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |
|---|---|---|---|

| VITAL SIGNS: TEMP 98.6 | ORAL RECTAL | RESP. 20 | PULSE 103 | B/P 142 90 | RECHECK IF SYSTOLIC <100> 50 / |
|---|---|---|---|---|---|

### NATURE OF INJURY OR ILLNESS

Body Chart Per DOC

S- "I was assaulted by a DOC officer".

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

### PHYSICAL EXAMINATION

O- Alert & Oriented to person, place, and time. Resp. with ease. Skin warm, dry, and intact. Small abrasion to left wrist, no bruises, no cuts, no distress noted

A- body chart per ADOC

P- Release to ADOC

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

### DIAGNOSIS

### INSTRUCTIONS TO PATIENT

| DISCHARGE DATE 11/23/06 | TIME 6:20 ☐AM ☑PM | RELEASE / TRANSFERRED TO ☑DOC ☐ AMBULANCE | CONDITION ON DISCHARGE ☑SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE J. Leverett LPN | DATE 11/23/06 | PHYSICIAN'S SIGNATURE 11/23/06 | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) Griffith, Jody | DOC# #249169 | DOB 9/11/71 | R/S W/M | FAC. KCF |
|---|---|---|---|---|

PHS-MD-70007        **(White – Record Copy, Yellow – Pharmacy Copy)**

PHS016

Facility Name:

CTM 4mg i
BID
x 7 days

8A

4P

Start Date 1-10-07
Stop Date 1-17-07

Hooper

Motrin 200mg
PO TID
x 3 days

8A

4P

Start Date 1-10-07
Stop Date 1-13-07

Hooper

Diagnosis

Allergies   NKDA

Housing Unit

Patient ID Number   2491169

Patient Name   Griffith, Jody

A. Davis, LPN AD

Facility Name: KILBY

Bucetrin 800s +
pu B.Jax 14d

Motrin 600mg po
B.D PRN
x 14d

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|------|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|

Start Date 11/27/06    Prescriber
Stop Date 12/12/06    RX #

Start Date 11/27/06    Prescriber
Stop Date 12/13/06    RX #

Diagnosis

Allergies NKDA

Documentation Codes
1. Discontinued Order
2. Refused
3. Patient out of facility
4. Charted in Error
5. Lock Down
6. Self Administered
7. Medication out of Stock
8. Medication Held
9. No Show
10. Other

Patient ID Number: 249169
Patient Name: Griffith, Jody

PHS018

Facility Name: KILBY

Month/Year of Charting: 11/06

Bactrim DS +
PO BID X 14d

0900

1800

Start Date: 11/27/06    Prescriber: Adamson CRNP
Stop Date: 12/12/06    RX #:

Motrin 600mg
PO BID PRN
X 14d

P
N

Start Date: 11/27/06    Prescriber: Adamson CRNP
Stop Date: 12/12/06    RX #:

Diagnosis:

Allergies:

Housing Unit:

Patient ID Number: 249169

Patient Name: Griffith, Jody

PHS019

DOC N610
09/87

*PC*

ALABAMA DEPARTMENT OF CORRECTIONS

RECEIVING SCREENING FORM

INMATES NAME: *GRIFFITH, JODY* w/ *249169*  DATE: *1-4-07*  TIME: *11:50 Am*

DOB: *9-11-71*  OFFICER: *S. Matthews*  INSTITUTION: *LCF*

### BOOKING OFFICERS VISUAL OPINION

| | Yes | No |
|---|---|---|
| 1. Is the Inmate Conscious ? | Yes | ___ |
| 2. Does the inmate have any obvious pain or bleeding/other symptoms suggesting the need for emergency services ? | ___ | X |
| 3. Are there any visible signs of trauma or illness requiring immediate emergency or doctor's care ? | ___ | X |
| 4. Any obvious fever, swollen lymphnodes, jaundice, or other evidence of infection which might spread through the institution ? | ___ | X |
| 5. Is the skin in poor condition or show signs of vermin or rashes ? | ___ | X |
| 6. Does the inmate appear to be under the influence of Alcohol, or Drugs ? | ___ | X |
| 7. Are there any visible signs or Alcohl or Drug withdrawal ? (Extreme perspiration, shakes, nausea, pinpoint pupils etc) | ___ | X |
| 8. Is the inmate making any verbal threats to staff or other inmates ? | ___ | X |
| 9. Is the inmate carring any medication or report that he is on any medication which must be continuously administered or available ? | ___ | X |
| 10. Does the inmate have any obvious physical handicaps ? | ___ | X |

IF THE ANSWER IS YES TO ANY QUESTIONS FROM 2 to 10 ABOVE - SPECIFY WHY IN SECTION BELOW

| | | |
|---|---|---|
| 11. Are you presently taking medication for diabetes, heart disease, seizure, athritis, asthma, ulcers, high blood pressure or psychiatric disorder? | ___ | X |
| 12. Are you on any special diet prescribed by a physician ? (if yes - what type ? ) | ___ | X |
| 13. Do you have a history of veneral disease or abnormal discharge ? | ___ | X |
| 14. Have you recently been hospitalized or recently seen a medical or psychiatric doctor for any illness ? | ___ | X |
| 15. Have you ever attempted suicide ? (If yes - When ?_____ How ?_____ | ___ | X |
| 16. Do you want to do any harm to yourself now ? | ___ | X |

|  | Yes | No | No Responce |
|---|---|---|---|
| 17. Do you want to talk to a mental health counselor ? | ____ | X | ____ |
| 18. Are you allergic to any medication ? | ____ | X | ____ |
| 19. Have you recently fainted or had a head injury ? | ____ | X | ____ |
| 20. Do you have epilepsy ? | ____ | X | ____ |
| 21. Do you have a history of tuberculosis ? | ____ | X | ____ |
| 22. Do you have diabetes ? | ____ | X | ____ |
| 23. Do you have hepatitis ? | ____ | X | ____ |
| 24. Do you have a painful dental problem ? | ____ | X | ____ |
| 25. Do you have any medical problem we should know about ? | ____ | X | ____ |
| 26. Do you have a past alcohol or drug history ? | ____ | X | ____ |

26. Do you have a past alcohol  or drug history ?
    What type:_____ How much used_____
    For how long:_____
    Last time you used any:_____

COMMENTS: (Unusual behavior etc.)

_____

_____

FOR THE OFFICER:

27. Was the new inmate briefed on sick/dental call procedures? _YES_

28. This inmate was:  a.  Release for normal processing _YES_
                      b.  Referred to appropriate health care unit _____
                      c.  Immediately sent to health care unit _____

                              _____
                              Officer's Signature

NOTE:  This form is completed on inter & intra system transfers at receiving and will
be filed in the inmates medical jacket to comply with ACA Standards 2-4289, 2-4290 and
AMA Standard 140.

                              X _____
                               Inmate's Signature

# PHS

## Prison Health Services

Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL 35749
Telephone: (256) 233-4600, Ext. 234 or
(256) 230-9417
Fax: (256) 230-9417

I have read the *Access to Health* Care information sheets and have been given a copy. I understand how to access health care.

Name _Jody Tift_                    Date _1-4-07_

AIS # _249169_

Medical Staff _A Simms RN_        Date _1-4-07_

Created 03/15/06

PHS022

I have read the *access to health care* information sheets and have been given a copy.    I understand how to access health care.

Name X ~~Archy~~ _____  Date 11-9-06

AIS# 249169

Medical Staff F. Thomas _____  Date 11-9-06

4/13/04

PHS023