IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2008 APR -1 A 9 35

DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

JODY EDWIN GRIFFITH,

    Plaintiff,

v.                                                          Case No: 2:07-CV-749-MEF

GARY ANDERSON, et al.,

    Defendants.

---

PLAINTIFF'S RESPONSE TO THE 'SPECIAL REPORT'
OF DEFENDANTS LEVERETTE AND DULANEY

---

    Comes now, the Plaintiff, Jody Griffith, in compliance with this Court's order dated March 11, 2008, regarding the assertions raised by Defendants Leverette and Dulaney in their 'Special Report' filed March 5, 2008, and submits the following in response thereof:

1

1. <u>GRIFFITH PROPERLY EXHAUSTED ALL OF HIS AVAILABLE ADMINISTRATIVE REMEDIES IN COMPLIANCE WITH THE PRISON LITIGATION REFORM ACT, 42 U.S.C. §1997(e)(a).</u>

Defendants Leverette and Dulaney (the "Nurses") claim in their Special Report that, among other things, the Plaintiff ("Griffith") failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. §1997(e)(a), but this allegation is not true. Specifically, the Nurses argue that Griffith's claims regarding denial of medical care under §1983 should be precluded because Griffith failed to utilize the 'Sick Call' and 'Grievance' procedures in place at Kilby Correctional Facility ("Kilby") (Document 45, p. 3-6) following the incident. Both of these contentions are disingenuous and without merit, as discussed below.

A) <u>The Sick Call Procedures</u>

The Nurses have incorporated a copy of the sick call procedures at Kilby into their Special Report, and maintain that they are relevant to these proceedings. However, these policies are inapplicable to the case at bar. These sick call procedures apply only to "non-emergency situations".

2

(Doc. 45, p.3, II.B.1.) Inmates with emergency injuries are treated immediately, without having to wait to see medical staff. Griffith's injuries easily qualified as an "emergency situation", nullifying the entire sick call process. The Nurses conveniently point out in their response that if an inmate's injuries "appear to be urgent or life-threatening, the medial staff will immediately have the inmate brought to the infirmary, and the inmate will be examined and treated by a physician." (Document 45, Special Report p.4.)

This is what precisely happened in the case at bar. Griffith was not complaining of a mere cough or a sore throat, but had just endured a savage beating; this was an "emergency situation", and he was transported directly to the infirmary for evaluation. (Griffith Affidavit, Complaint Exhibit "A", p.3-4). Because Griffith was considered an "emergency case", he did not need to sign up for sick call and the Nurses' argument must fail. Moreover, Griffith actually did sign up for sick call and was seen several days after the incident for a follow-up examination and treatment, as indicated by the record (Griffith Medical Records). Therefore, the Nurses' argument is without merit.

B) <u>The Grievance Procedures</u>

The Nurses also assert that Griffith should have utilized the medical grievance procedure at Kilby (Document 45, p. 4, II.B.2.), but this argument is equally without merit. The facts surrounding the case at bar reveal that Griffith properly exhausted all of the administrative remedies available to him following the incident wherein he was assaulted at Kilby Prison. Griffith invoked the internal grievance process at Kilby by making complaints against Defendants Anderson and Peterson, as well as the Nurses. The incident surrounding Griffith's §1983 claims was quickly reported to prison administrators and investigated by the Department of Corrections' I & I Division. Griffith reported the attack on the day that it occurred, and he vigorously pursued an investigation into the matter. The investigation rose through the hierarchy of the prison system, eventually reaching all the way to the Office of the Commissioner in downtown Montgomery. Included among the exhibits is an internal memorandum from Warden Arnold Holt, an Investigative Report by Errick Demus dated December 13, 2006, and a letter from Corrections Commissioner Richard Allen dated March 9, 2007. The prison administrators were obviously looking into the situation,

4

proving that Griffith was exhausting all his internal administrative remedies.

How much farther could Griffith go administratively except going all the way to the Commissioner of Corrections? Griffith submitted his complaint to every level of command, from Corrections Officer, to Sergeant, to Lieutenant, to Captain, to Warden, and ultimately to the Commissioner. The Commissioner is the highest possibly position within the Alabama Department of Corrections (answering directly to Alabama governor Bob Riley), and the Commissioner himself was personally involved in this investigation (Defendant Anderson Personnel File). The exhibits show that Commissioner Allen suspended Defendant Anderson for his actions against Griffith and his subsequent attempt to conceal the incident.

The administrative remedy exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. §1997(e)(a), are designed to reduce the number of lawsuits coming before the courts by staving off those suits that could be resolved administratively. The Supreme Court has pointed out that the PLRA's exhaustion requirement is specifically intended to:

> "afford prison officials time and opportunity to address complaints internally before allowing the initiation of a federal case… because in some

instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation... and in other instances, the internal review might filter out some frivolous claims." *Porter v. Nussle*, 534 U.S. 524-525 (2002)

In the case at bar, the internal review did not filter out a frivolous claim, but instead revealed the exact opposite: a true incidence of assault against Griffith by corrections officers and the denial of medical care for his injuries. Accordingly, the record before the Court proves that Griffith exhausted all his administrative remedies, satisfying the provisions of 42 U.S.C. §1997(e)(a).

2. DEFENDANTS LEVERETTE AND DULANEY ARE NOT ENTITLED TO SUMMARY JUDGMENT ON GRIFFITH'S DELIBERATE INDIFFERENCE AND DENIAL OF MEDICAL CARE CLAIMS.

The Supreme Court has stated that "deliberate indifference" to serious medical needs of inmates constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct 285 (1976). Deliberate indifference is used to measure the adequacy of officials' response to the known medical needs of inmates, and the delay or denial of access to medical attention is one of the factors

recognized by *Estelle*, supra. Applying the facts in evidence to the governing principles of law, the Nurses are not entitled to summary judgment because the Nurses' actions meet both components of the deliberate indifference analysis: the "objective" component and the "subjective" component.

Objectively, the number and extent of Griffith's injuries in this case cannot be labeled *de minimus*. The body chart entered into evidence shows that Griffith sustained at least 13 separate injuries as a result of the assault by Officer Anderson. The internal Department of Corrections I & I investigation concluded that Griffith suffered injuries "from his head to his foot" (I & I report p.1). The photographs and medical charts of Griffith's wounds do not show de minimus injuries, but instead reflect the aftermath of a brutal assault: Griffith had an 8" wide contusion to his left leg, temporary loss of hearing and a potential concussion from his head injury, and numerous other abrasions/contusions all over his whole body (I & I Report; Photographs; Medical Records). Griffith's extensive injuries objectively rise to the level of constitutional violations.

Subjectively, the evidence supports a finding that the Nurses were "subjectively aware" that Griffith was hurt and

needed prompt medical attention, but deliberately chose to ignore his requests for treatment. Griffith was first sent to the infirmary approximately 45 minutes after the incident (Complaint p. 8; Griffith Affidavit p.3), and saw Nurses Leverette and Dulaney. The Nurses refused to document Griffith's injuries and sent him back to his cell untreated (Griffith Affidavit; I & I Report; Griffith Medical Records), leaving Griffith to suffer a substantial amount of pain. Griffith's injuries were not properly documented and itemized until several hours later when the Shift Commander ordered the Nurses to compile a second body chart. The two-hour interval that Griffith was injured and sat in his cell without treatment constitutes the type of "unnecessary and wanton infliction of pain" prohibited by *Estelle*. The Nurses' actions violated Griffith's Eighth Amendment right by causing him undue pain and suffering.

### Nurse Dulaney

Nurse Dulaney states in her affidavit that she did not see Griffith's injuries during his initial examination, but this statement is contradicted by her statements to I & I Investigator Errick Demus, wherein she admits seeing Griffith's injuries when Griffith first came to the

infirmary (Statement of Alfreda Dulaney p.3-5). Why, then, were all of Griffith's injuries not documented in the first body chart? Griffith proposes that the Nurses' actions indicate that they were complicit in concealing the assault by a corrections officer, thus violating Griffith's constitutional rights. The Nurses' refusal to document the extent of Griffith's injuries and provide him with proper medical treatment was an attempt to conceal the assault on Griffith by Defendant Anderson. In doing so, the Nurses denied Griffith any treatment for known medical injuries, and Griffith suffered undue pain and suffering. This is a prime example of "deliberate indifference", supported by Nurse Dulaney's own statement (Statement of Alfreda Dulaney to I & I).

## NURSE LEVERETTE

Nurse Leverette states in his response and affidavit that he did not document Griffith's injuries during his first examination because Griffith was "extremely angry, upset… and uncooperative" (Document 45, p.6), and that Griffith did not identify any specific injuries that required medical treatment (Document 45, p.18). Both of these allegations are untrue and unsupported by the record.

Griffith submits a sworn affidavit with this motion rebutting these contentions (Griffith Affidavit III, attached). Griffith states in his affidavit that he identified the specific injuries he desired to be documented and treated to Nurse Leverette. Griffith further asserts that he was not belligerent or uncooperative during either examination by Nurse Leverette. Officers Dinkins, Hall, and Jenkins all accompanied Griffith in the infirmary, none of which saw any need to intervene or mention Griffith's demeanor in their reports. If Griffith had truly been "extremely angry", as alleged by the Nurses, then these officers would have surely done or said something. The Nurses also maintain that Griffith's injuries did not require any medical treatment (Document 45, p.7), but Griffith insists that his injuries were serious enough to mandate some medical attention. With the exception of the concussion to Griffith's head (potential sub-dural hematoma), his injuries were probably non-life threatening, but he was in a great deal of pain from the aftermath of the assault and deserved to receive some type of medical care. By denying Griffith any medical treatment altogether, the Nurses violated Griffith's constitutional rights under the Eighth Amendment.

3. <u>THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT FOR DEFENDANTS LEVERETTE AND DULANEY.</u>

Summary judgment is to be granted only if the record before the court shows "that there are no genuine issues of material fact and that the moving party is entitled to the judgment as a matter of law". <u>Rule 56 (c)</u>, Fed. R.Civ.P. A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); citing *Tipton v. Bergrohr*, 965 F.2d 994, 998 (11th Cir 1992). If reasonable minds could differ on the inferences arising from the disputed facts, then a court must deny summary judgment. *Miranda v. B & B Cash Grocery*, 975 F 2d 1518, 1534 (11th Cir 1992).

In the present case, the affidavits of the plaintiff and the defendants are squarely contradictory as to what transpired during the incident in question. These conflicting accounts give rise to numerous factual disputes that need to be resolved by a jury. Defendants Leverette and Dulaney maintain that their actions did not violate Griffith's constitutional and civil rights, claiming instead that they provided Griffith with adequate medical care. In contrast, Griffith asserts that the Nurses refused to provide him with medical care or document his injuries,

then sending him back to his cell to suffer for several hours without any treatment whatsoever. These accounts are highly contradictory, thus presenting genuine issues of material fact.

In addition to the sworn affidavits of Griffith, Leverette, and Dulaney, the plaintiff also relies on numerous documents and exhibits obtained through discovery that corroborate Griffith's version of events. Moreover, Griffith has now executed third rebuttal affidavit (attached Exhibit A), specifically refuting numerous statements contained within the Nurses' affidavits. Griffith's latest affidavit should also be considered by this court as additional evidence showing the Nurses are not entitled to summary judgment because it raises additional controversies in dispute and shows more genuine issues of material fact. When considering summary judgment, "the non-moving party may avail itself of all facts and justifiable inferences in the record taken as a whole… the evidence of the non-movant is to be believed, and all inferences are to be drawn in his favor." *Tipton*, at 998.

The evidence currently before this court is substantial, corroborates each essential element of Griffith's claims against the nurses, and would support a jury verdict in Griffith's favor. Griffith has demonstrated

the existence of genuine issues of material fact, and Defendants Leverette and Dulaney are not entitled to summary judgment as a matter of law. Therefore, the Nurses' motion for summary judgment should be denied and a jury should be empanelled to hear this evidence and determine the issues of fact at trial.

## Conclusion

Wherefore, based on the foregoing facts, Griffith has demonstrated that Defendants Leverette and Dulaney violated Griffith's constitutional and civil rights; that Griffith properly exhausted his administrative remedies in compliance with the PRLA; that the Defendants' actions rose to the level of constitutional violations; and that the Defendants are not entitled to summary judgment as a matter of law. Accordingly, the Defendants' motion for summary judgment contained within their 'Special Report' is due to be denied in reference to Defendants Leverette and Dulaney.

Respectfully submitted on this 26 day of March, 2008,

Jody Griffith,
pro se

## Certificate of Service

I hereby declare and affirm that I have served a copy of the foregoing motion on counsel for the defendants by placing the same in the U.S. Mail, postage pre-paid, addressed to William R. Lunsford, c/o Maynard, Cooper, and Gale, 655 Gallatin Street, Huntsville, AL, 35801, and the Office of the Attorney General, 11 S. Union Street, Montgomery, AL, 36130, on this 26th day of March, 2008.

*Jody Griffith* (signature)

**STATE OF ALABAMA**                              <u>AFFIDAVIT OF JODY GRIFFITH</u>

<u>STATE OF ALABAMA</u>

I, Jody Griffith, hereby declare the following under penalty of perjury:

1. My name is Jody Edwin Griffith. I am the plaintiff in this case. I make this affidavit in opposition to Defendant Herbert Leverette's and Alfreda Dulany's motion for summary judgment in regards to my denial of medical care and deliberate indifference claims.

2. Defendants Leverette and Dulaney are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These issues are set out within this affidavit.

3. The Nurses' allegation that I did not exhaust all of my administrative remedies is not true. I fully exhausted all of the administrative remedies that were available to me at Kilby following the incident wherein I was assaulted by Defendant Anderson. I invoked the grievance process by informing other officers of the attack, and they referred my complaints to the Shift Commander. My grievances were eventually relayed to Warden Holt. The Department of Corrections' I & I Division later investigated the attack, questioned me at length about the incident, and forwarded their findings to Commissioner Richard Allen. I had no other remedy available to me administratively since I had already brought the situation to everyone's attention.

4. In regards to paragraph 6 of Nurse Dulaney's affidavit in reference to sick call, these procedures did not apply to me under the circumstances on November 23, 2006, because my injuries were considered an "emergency" situation, not a sick call situation. Besides, I did not have access to the outside hallways at Kilby because I was a segregation inmate, housed in protective custody lock-up.

1

5. The statement in paragraph 9 of Nurse Dulaney's affidavit and paragraph 4 of Nurse Leverette's affidavit that I was uncooperative during my medical examination is also not true. I was very cooperative with Nurses Dulaney and Leverette during my initial trip to the infirmary, because I wanted them to see and document the extent of all my injuries. I cooperated by lowering my pants below my knees and removing my shirt.

6. In opposition to the statements of Nurses Leverette concerning the extent of my injuries, I stipulate that most of my injuries were non-life threatening, but they were still serious enough to need medical attention. Some of the cuts and bruises needed to be cleaned, and my head and ear needed to be examined for possible concussions. I was also in a great deal of pain and would have accepted some type of pain medication. I also wanted Nurse Leverette and Dulaney to evaluate all of my injuries and document them for purposes of the investigation.

7. Contrary to Nurse Leverette's contentions in paragraph 5 of his affidavit stating I did not have any serious injuries and that I was only prescribed Motrin during my sick call visit on November 27, 2006, this statement is not true. I was also prescribed Bactrum, an antibiotic due to an infection in my left ear as a result the assault by Defendant Anderson. (See Document 47, Page 33 of 38). I complained to nursing staff on the night of the incident that my ear was hurting and needed attention, but none was given.

8. Nurse Leverette also states in his affidavit that on November 27, 2006, I did not voice any complaints about thigh pain during my sick call screening, but this is not true. Nurse Leverette was not present for this examination, so he could not know what transpired. I did complain of pain and bruising to my left thigh, and showed the wound to a nurse practitioner. My primary complaint during this screening concerned my head injury. (See Document 47, Page 28 of 38) I was instructed to sign-up for sick-call if pain persisted.

9. Nurse Leverette's statement in paragraph 4 of his affidavit is in error regarding the reason behind my initial trip to the infirmary. I was already in protective custody segregation at the time of the assault. The body chart was ordered by Department of Corrections as part of the investigation into the attack. Nurse Leverette also states in paragraph 5 the X-rays ordered by the Nurse Practitioner were

2

never taken, but this statement is not true. The X-rays were taken. I do not know what became of them.

10. I feel that Nurses Leverette and Dulaney violated my constitutional and civil rights by refusing to provide me with medical care following the incident on November 23, 2004. Specifically, the refused to give me any medications for pain or inspecting the injuries to my head, left ear, and other places. I feel that they were attempting to conceal Defendant Anderson's illegal conduct by refusing to document my injuries, which made them complicit in violating my rights. I was injured and in a great deal of pain, but I did not receive any medical treatment for several hours due to their actions.

*Jody Edwin Griffith*

Notary Public

State of Alabama
County of Limestone

I, the undersigned Notary Public of the state and county listed, hereby affirm that the individual listed above appeared before me and executed the foregoing 'Affidavit of Jody Griffith' in my presence on this 26 day of March, 2008.

Notary Public
My Commission Expires:

3

Jody Griffith 249169
Limestone C.F. E-18B
28779 Nick Davis Rd
Harvest, AL. 35749



HUNTSVILLE AL 358
2008
28  MAR

HUNTSVILLE AL 3
2008
28

This correspondence is forwarded from an Alabama State Prison. The contents have not been evaluated, and the Alabama Department of Corrections is not responsible for the substance or content of the enclosed communication.

Office Of The Clerk
United States District Court
P.O. Box 711
Montgomery, AL. 36101