IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JODY EDWIN GRIFFITH, #249 169      *

      Plaintiff,                            *

          v.                                *               2:07-CV-749-MEF
(WO)

GARY ANDERSON, *et al.*,                *

      Defendants.                           *

_____


**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Jody Griffith ["Griffith"], an inmate incarcerated at the Limestone Correctional Facility in Harvest, Alabama, alleges that while incarcerated at the Kilby Correctional Facility ["Kilby"] in Mt. Meigs, Alabama, he was subjected to excessive force and subsequently denied adequate medical care and treatment for injuries sustained during the use of force incident.  Named as defendants are Correctional Officers Gary Anderson and Anthony Peterson and Nurses Alfreda Dulaney and Herb Leverette. Plaintiff seeks declaratory relief, monetary damages, court costs, and attorneys fees.  Plaintiff demands trial by jury.

In accordance with the orders of the court, Defendants filed answers, special reports, a supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint. In these documents, Defendants Anderson and Peterson argue that they are entitled to summary judgment on Griffith's allegations of

excessive force and deliberate indifference to his serious medical needs.   Defendants Dulaney and Everette asserts that the medical claims presented against them are due to be dismissed because  Griffith failed to exhaust an administrative remedy available to him at Kilby. The court provided Plaintiff an opportunity to file a response to the arguments presented by Defendants.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat Defendants' written reports as  motions for summary judgment. *See Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment [motion,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible."), *cert. denied,* 129 S.Ct. 733 (Dec.8, 2008).   The court then informed Plaintiff that Defendants' special reports, as supplemented, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed responses to the special reports filed by Defendants. This case is now pending on Defendants' motions for summary judgment.  Upon consideration of the motions, Plaintiff's opposition to the motions, and the supporting and opposing evidentiary materials,  the court concludes that Defendants Anderson's and Peterson's motion for summary judgment  on Plaintiff's  excessive force, deliberate indifference, and state law assault and battery claims is due to be denied and Defendants Dulaney's and Everette's

2

motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Defendants have met their evidentiary burden.  Thus, the burden shifts to Griffith to

---

Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motion for summary judgment, Griffith is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there

must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material

6

fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Griffith's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In the present cause of action, Griffith has demonstrated a genuine issue of material fact in order to preclude entry of summary judgment on his § 1983 claims for excessive force and deliberate indifference and his state law claims for assault and battery against Defendants Anderson and Peterson. Plaintiff has not, however, demonstrated a requisite genuine issue of material fact in order to preclude summary judgment with respect to his claims against Defendants Dulaney and Everette. *Matsushita*, *supra*.

## II. DISCUSSION

*A. Injunctive/Declaratory Relief*

Plaintiff is  no longer incarcerated at the Kilby Correctional Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a

pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the Kilby Correctional Facility, his requests for injunctive and/or declaratory relief have been rendered moot.

*B.  The Complaint*

Griffith formerly worked as a correctional officer with the Alabama Department of Corrections ["ADOC"].  He is currently an inmate in custody of the ADOC serving a 35-year sentence for murder. Because of his status as former correctional officer, Griffith is classified as a protective custody inmate requiring his segregation from other inmates at all times. (*Doc. No. 1.*)

The incident giving rise to this lawsuit occurred on November 23, 2006. At approximately 4:30 p.m., Officer Peterson directed Griffith to the shower area where inmate Christopher Jordan and Officer Anderson were waiting for inmate Wendell Lovell to finish showering.  Officer Anderson removed the handcuffs from Griffith and inmate Jordan.  The guard proceeded to open the door to the shower cage to allow inmate Lovell to exit the shower area and then directed both Griffith and Jordan to enter the shower area.  Both inmates complied and began showering.  (*Doc. No. 1.*)

After only a couple of minutes, Officer Anderson asked Griffith - "Waldo, can't you talk and shower at the same time."  Griffith replied that he was showering and resumed

showering and talking to inmate Jordan. Griffith asserts that Officer Anderson then stated "That's it, Waldo! Get your ass out of the shower!"  Griffith maintains that he started to comply with Officer Anderson's order by rinsing the shampoo from his hair and getting ready to exit the shower. Officer Anderson momentarily walked away from the shower area and returned as Griffith was drying himself off in the front corner of the shower cage. (*Doc. No. 1*.)

Without notice or warning, Griffith alleges that Officer Anderson forcefully opened the door to the shower cage causing it to strike Griffith on his left wrist and arm. Officer Anderson then entered the shower area where Griffith and inmate Jordan were standing and began striking Griffith with a baton.  Officer Anderson struck Griffith's left leg approximately four inches above the knee.  The guard then grabbed Griffith by his left arm and attempted to forcibly remove him from the shower cage while he continued to assault Griffith with his baton and hands.  During the altercation, Officer Anderson jerked Griffith's arm causing him to lose his balance,  fall, and hit his head on the concrete floor of the shower.  (*Doc. No. 1*.)

Griffith momentarily lost consciousness after hitting his head on the floor. When he came to he found himself lying on the outside of the shower.  He then noticed Officer Anderson tapping his shoulder with either his boot or baton and directing Griffith to "take his bitch ass back to [his] cell!"  Before getting up Griffith asked to be taken to the infirmary or speak with a supervisor.  Officer Anderson responded by informing Griffith that "[I]f you

don't take your bitch ass back to your cell I"m gonna take this stick to your ass again!" Griffith remained lying on the floor for approximately five minutes in a dazed state and unable to stand up. He repeated his request that he either be taken to the infirmary or be allowed to see a supervisor but Officer Anderson simply instructed him to return to his cell. (*Doc. No. 1.*)

After Griffith returned to his cell, Officer Peterson came by to collect his handcuffs. Griffith stated he had been returned to his cell without handcuffs and relayed to Officer Peterson his encounter with Officer Anderson. Griffith requested that Officer Peterson allow him to speak with the shift commander or be taken to the infirmary.[2]  Officer Peterson indicated instead that he would have Officer Anderson come talk with Griffith. Forty-five minutes later Griffith stopped Officer Tericus Dinkins and reported to him the incident with Officer Anderson.  Officer Dinkins left Griffith's cell area for a few minutes then returned and escorted him to the infirmary. (*Doc. No. 1.*)

Officers Anderson and Peterson deny the allegations made against them.  Officer Anderson asserts that Griffith refused orders to approach the shower door so that Officer Anderson could remove his handcuffs.  As a result, Officer Anderson opened the shower gate and ordered  Griffith to exit the shower. Because Griffith did not comply, Officer Anderson

---

Attached to Plaintiff's opposition is an affidavit signed by inmate Lovell who states after returning to his cell from showering on November 23, 2006, he heard a commotion coming from the C-Block shower area. He walked to the front of his cell where he observed Officer Peterson standing at the top of the stair overlooking the C-Block shower area and then saw the guard catch a baton which had been tossed to him from the shower area on C-Block. (*Doc. No. 22, Lovell Affidavit.*)

approached Griffith, grabbed him by his left bicep and began escorting him out of the shower cell.  Griffith resisted Officer Anderson who re-established his hold on Griffith and tugged at him to remove him from the shower area.  As Griffith was being removed from the shower cage, Officer Anderson maintains that the inmate failed to step over an eighteen inch ledge at the door of the shower cell causing him to fall from Officer Anderson's grasp and hit the floor. Officer Anderson helped Griffith to his feet, escorted him to the top of the stairs, removed his handcuffs, and told him to return to his cell. (*Doc. No. 14, Anderson Affidavit*.)

Officer Anderson asserts that he returned to the shower block where he completed the rest of the showers.  Afterwards he informed Sgt. Smith about the incident with Griffith and informed him that he would write up Griffith for disobeying a direct order. Officer Anderson also requested that Sgt. Smith arrange for Griffith to get a body chart "so that self inflected wounds would not appear days later with other accusations to follow." (*Doc.  No. 14, Exh. 1.*)

Defendant Peterson denies the allegations in Griffith's complaint. He maintains that he did not witness  an altercation between Officer Anderson and Griffith, Griffith did not inform him of an incident he had with Officer Anderson, Griffith did not ask him if he could speak to a Shift Commander or go to the infirmary, and he (Officer Peterson) did not supply Officer Anderson with a baton. (*Doc. No. 14, Exh. 2.*)

*C.  Official Capacity Claims*

To the extent Plaintiff seeks to sue Defendants Anderson and Peterson in their official

11

capacities, they are immune from monetary damages.   "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants Anderson and Peterson are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. These Defendants are, therefore, entitled to absolute immunity from any claim for monetary damages asserted against them in their official capacities.

D.  *Individual Capacity Claims*

i.  *The Excessive Force Claim*

Defendants Anderson and Peterson argue they are entitled to qualified immunity on Griffith's claims of excessive force.  The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established

to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002),

citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).

"Moreover, an officer who is present at the scene and who fails to take reasonable steps to

protect the victim of another officer's use of excessive force can be held personally liable for

his nonfeasance." *Skrtich*, 280 F.3d at 1301. Thus, a qualified immunity defense is not

available when a plaintiff asserts the use of excessive force and the only question for a

federal district court is whether the plaintiff has alleged facts sufficient to survive a motion

for summary judgment, unless the force used was *de minimis*. *Id*. at 1302; *see also Hudson*,

503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  Accordingly, this

court will consider whether Griffith's allegations that Officers Anderson and Petitioner

maliciously and sadistically used excessive force against him and/or witnessed the uses of

force without intervening to protect Griffith, which the court must take as true for purposes

of summary judgment, sets forth a violation of his Eighth Amendment rights.

In *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), the Eleventh Circuit

explained that whether a defendant's use of force is excessive, and thus violative of an

inmate's right to be free from cruel and unusual punishment, "depends on whether the

[defendant's] act 'shocks the conscience,' *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir.

2007), and it necessarily will if the force " 'was applied ... maliciously and sadistically for

the very purpose of causing harm.' " *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21

(1986).

13

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327). *See also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd

14

Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim)

Griffith maintains that Officer Anderson's actions on November 23, 2006 constituted an unnecessary and excessive use of force because the guard's assault was committed in the absence of need or provocation and done maliciously and/or sadistically. Griffith further asserts that as a result of Officer Anderson's conduct he sustained numerous bruises and abrasions, a possible concussion, and also developed an ear infection. Defendant Anderson denies Griffith's allegations of excessive force and maintains that he only used the amount of force necessary to remove Griffith from the shower cage during which time the inmate tripped and hit the concrete floor. Griffith further claims that Officer Peterson supplied the baton used by Officer Anderson during the  assault and failed to intervene or prevent  the misapplication of force by Officer Anderson who Griffith contends has a "known pattern of physical abuse of inmates."

The court is mindful of the fact that prisoners' non-compliance with the rules and regulations of a jail and the orders and directives of their custodians is not easily tolerated in a prison environment where strict adherence to rules and order within the institution's walls are mandated for security, safety, and discipline. Nevertheless, Plaintiff maintains that at no time during the incident in question did he pose a threat to Defendants nor did he ever fail to obey an order or  engage in any combative conduct.  Plaintiff, therefore, argues that Defendants' use of force under these circumstances was excessive. Defendants deny all

allegations regarding the use of force and/or failure to intervene and maintain the only amount of force used was that necessary to quell Griffith's resistance in removing him from the shower and to gain control of him as he struggled with Officer Anderson during the guard's attempt to remove him from the shower cage.[3]

Viewing the complaint in the light most favorable to Griffith, the court concludes he has set forth facts which demonstrate a violation of his constitutional rights.  "Having established a constitutional violation, the next step in the qualified immunity analysis usually is to determine whether the right was clearly established.  *See Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  However, we have held that 'there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful.  *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002)."  *Danley*, 540 F.3d at 1310.  Under the facts presented by Griffith, disputed issues of material fact exist regarding the need for the use of force, whether the amount of force used was appropriate, and whether reasonable steps were taken to protect the victim of another officer's use of excessive force.  Thus, Defendants Anderson and Griffith are not entitled to qualified immunity, *Id*.; *Skrtich*, 280 F.3d at 1301, and their request for summary judgment with respect to Griffith's

_____

        The evidentiary material before the court includes an investigative report about the November 23, 2006 incident prepared by an investigator with the Investigation and Intelligence Division of the ADOC . (*Doc. No. 16*.)   The report includes transcripts of the investigator's interviews with Griffith, Officers Anderson and Peterson, Officer Tericus Dinkins, Nurse Dulaney, inmate Christopher Jordan, and Sergeant Allen Smith.

excessive force claim is due to be denied.

### ii.  The Deliberate Indifference Claim

Griffith alleges Officers Peterson and Anderson acted with deliberate indifference to his serious medical needs by failing to provide him with necessary medical treatment for the injuries he suffered during the assault.  Specifically, Griffith asserts that Officer Anderson was aware of injuries he suffered from the assault but ignored his request to be taken to the infirmary. Griffith alleges that he also asked Officer Peterson for medical treatment several times after he was returned to his cell but the guard denied his requests.  Griffith maintains that both correctional officers had a "subjective awareness" of his injuries but acted with deliberate indifference to his serious medical needs.  (*Doc. Nos. 1, 22*.)

According to the unrefuted evidentiary material, Griffith received an  initial body chart at 6:15 p.m. on November 23, 2006.  The body chart reflects that Griffith complained of being assaulted by a correctional officer.  Nurse Leverette noted Griffith as being alert and oriented to person, place, and time. The nurse's notes further indicated "Resp with ease. Skin warm, dry, and intact. Small abrasion to left wrist. No bruises. No cuts. No distress noted." (*Doc. No. 14, Exh. 3*.)  Griffith received a  second body chart at 9:25 p.m. on November 23, 2006.  Medical personnel's examination of Griffith at this time indicated the following:

> O- Alert and oriented to person, place, and time. Resp. With ease. Skin warm, dry, and intact. On second exam minor abrasion noted with no bleeding noted as follows. < 1 cm on 3rd toe left foot, left posterior thigh 5 cm bruise, 4 cm bruise left lateral hip, 3 cm bruise left anterior hip, 3 cm bruise left lateral shoulder, 5.5 cm abrasion left interior forearm, small abrasion

17

> left wrist, < 1 cm abrasion left lateral head, < 1 cm superior left
> eyebrow. No distress noted.

(*Doc. No. 14, Exh. 3.*)

The next day Griffith's injuries were photographed and documented, and he also presented at sick call with complaints of severe jaw pain, a bad headache, and pain in his left ear.   On November 27, 2006  medical personnel examined Griffith for his complaint that something was wrong with the left side of his head.  Griffith received prescriptions for an antibiotic as well as pain medication (motrin). (*Doc. No. 14, Exh. 3; see also Doc. No. 45, Exh. C.*)

To prevail on a constitutional claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing the treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Goebert v. Lee County*, 510 F.3d, 1312, 1326 (11th Cir. 2007); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, correctional officers may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  When seeking relief based on deliberate indifference of responsible officials, an inmate is required to establish "an objectively serious need, an objectively insufficient

response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) ("To show that [an] official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.").  One identified "measure of whether a medical need is serious enough to satisfy the first element of a deliberate indifference claim is if the need 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' *Hill*, 40 F.3d at 1187 (internal quotation marks and citation omitted)." *Danley*, 540 F.3d at 1310-1311.   Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from

> which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2001).  Thus, for Griffith to avoid summary judgment on his deliberate indifference claim, he is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Griffith states that following the assault, Officer Anderson repeatedly refused his requests to be taken to the infirmary  and threatened him with another assault if he failed to return to his cell. After returning to his cell, Griffith told Officer Peterson he had just been assaulted and asked the guard to allow him to either speak to a shift commander or be taken to the infirmary.  Griffith contends that Officer Peterson only told him that he would tell Officer Anderson to come and talk to him and then walked away from the area. Approximately forty-five minutes later another correctional officer walked by Griffith's cell. Griffith reported the assault to that guard and asked to be taken to the infirmary.  The officer subsequently escorted Griffith to the infirmary at approximately 6:15 p.m. for a body chart. (*Doc. No. 1 at pgs. 3-4*; *see also Doc. No. 14, Exh. 3.*)

Officer Peterson denies that Griffith informed him about being assaulted by  Officer Anderson.  Officer Anderson maintains that following the incident in the shower area,  he informed Sergeant Smith that Griffith should be given a body chart to circumvent self-

inflicted wounds from appearing a day later as a result of Griffith's fall.   Officer Anderson maintains that Sergeant Smith approved the request for a body chart and subsequently sent Correctional Officer Tericus Dinkins to escort Griffith for a body chart.  (*Doc. No. 14, Exhs. 1, 2.*)  In his response to Defendants' dispositive motion, Griffith challenges the veracity of Officer Anderson's and Peterson's affidavits and argues the other evidence submitted in support of their dispositive motion, *i.e.*, the medical records and  photographs, support his claim for relief.  (*Doc. No. 22.*)

Reading the complaint in the light most favorable to Griffith, Officers Anderson and Peterson were aware of a risk of serious harm to Griffith from repeated baton strikes and having lost consciousness.  Griffith contends Officers Anderson and Peterson knew about his injuries and as the basis for their knowledge he  alleges that Officer Anderson inflicted the injuries by using a baton and also observed him lose consciousness after he fell and hit his head on the floor.  Griffith further contends that Officers Anderson and Peterson  knew that Griffith was actually suffering from various injuries because he claims they refused his requests for medical treatment.   "When [custodial officials] ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact my infer deliberate indifference."  *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (internal quotation marks and citation omitted).  Griffith complains that Officers Anderson and Peterson did just that.

With respect to the clearly established right element of a deliberate indifference claim,

"[t]his is a case in which general legal principles announced by [Eleventh Circuit] decisions in this area of law are enough to make the right violated clearly established."  *Danley*, 540 F.3d at 1313.  As previously determined, Griffith alleges both a serious medical need and the deliberate indifference of Officers Anderson and Peterson to this need.  The allegations in the complaint are that the defendant correctional officers took no measures to remedy the need and ignored Griffith's requests for medical treatment.  "Our earlier deliberate indifference decisions have stated that when [responsible officials] are aware of serious medical needs they may not ignore them or provide grossly inadequate care. *Bozeman*, 422 F.3d at 1273; *McElligott*, 182 F.3d at 1256. Although [Griffith's] allegations may later turn out to be unfounded, reasonable [officers] would have been aware that the conduct that [Griffith] alleges violated his clearly established rights."  *Danley*, 540 F.3d at 1313.  Defendants Anderson and Peterson are,  therefore, not entitled to qualified immunity on Griffith's deliberate indifference claim, and their motion for summary judgment with respect to this claim is likewise due to be denied.

*E. The State Law Claims*

Griffith's complaint alleges state law claims for assault and battery against Officer Anderson.  Because Alabama has long recognized a cause of action for conspiracy to commit assault and battery,  a defendant need not personally touch the plaintiff to be held liable for an assault and battery.  *See Abney v. Mize,* 155 Ala. 391, 46 So. 230 (1908).  The court, therefore, also concludes that Griffith has sufficiently alleged a cause of action against

Defendant Peterson for conspiracy to commit assault and battery.  Although Defendants Anderson and Peterson do not specifically address Griffith's state law claims, the court understands them to seek summary judgment against Griffith on all claims asserted against them. (*Doc. No. 14*.)

Under Alabama law, assault is defined as "'an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'" *Wright v. Wright,* 654 So.2d 542, 544 (Ala.1995) (quoting *Allen v. Walker,* 569 So.2d 350, 351 (Ala.1990)). A battery is a successful assault, and consists of touching another in a hostile manner. *Surrency v. Harbison,* 489 So.2d 1097, 1104 (Ala. 1986).  Also, as noted, a defendant need not personally touch the plaintiff to be held liable for an assault and battery. *See Abney,* 155 Ala. 391, 46 So. 230 (approving trial court's jury instruction that "if Ben Abney aided, abetted, or encouraged Dee Abney in entering into or continuing an unlawful assault on plaintiff, then he would be responsible for whatever Dee Abney did in the furtherance of such assault, notwithstanding that he may not have explicitly encouraged, aided, or abetted any one particular act of defendant Dee Abney."); *see also Alabama Pattern Jury Instructions 5.03 (Civil)*; *Deal by and through Barber v. Hill,* 619 So.2d 1347, 1349 (Ala.1993) (citing *Abney, supra*).

As described, *infra*, Griffith alleges that Defendant Anderson threw open the shower

cage's steel door very forcefully causing it to strike Griffith, immediately began striking Griffith with a baton and his hands, and then jerked Griffith by the arm causing him to lose his balance on the slippery surface, fall to the floor, and hit his head on the concrete.  Griffith maintains that Officer Peterson provided Officer Anderson with the baton he used to assault Griffith and then failed to intervene to prevent Officer Anderson's use of force against him. The court, therefore,  concludes that Griffith has sufficiently alleged a cause of action for assault and battery against Officer Anderson and sufficiently alleged a cause of action for conspiracy to commit assault and battery against Officer Peterson.  Accordingly Defendants Anderson's and Peterson's dispositive motion on these state law claims is due to be denied.

Griffith also claims that Officer Peterson exhibited contributory negligence when he failed to take preventative action to curb a known pattern of inmate abuse by Officer Anderson.   Contributory negligence, however, is not a claim for relief but rather an affirmative defense to be used against a claim for relief. *See* Rule 8(c)(1), *Federal Rules of Civil Procedure*.  Accordingly, Defendant Peterson is entitled to summary judgment on Griffith's contributory negligence claim.

## F.  The Medical Defendants

 Griffith alleges that Nurses Leverette and Dulaney were deliberately indifferent to his serious medical needs when they refused to examine, evaluate, treat, and document his injuries following his altercation with Officer Anderson.   In response to the complaint, Defendants Dulaney and Everette maintain this case is subject to dismissal because Plaintiff

failed to exhaust the administrative remedy provided at the Kilby Correctional Facility prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006). Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court]

25

because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings....   Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  548 U.S. at 90-91, 93, 126 S.Ct. at 2386-2387.   The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83-84, 126 S.Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).

The record in this case establishes that the health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related  to medical treatment. (*Doc. No. 45, Exh. A.*) The evidentiary materials submitted by Defendants demonstrate that Plaintiff failed to file any grievance with respect to the actions about which he complains in the instant complaint.  Plaintiff does not dispute his failure to exhaust the administrative remedy *available in the prison system* prior to filing this case.  The court, therefore, concludes that the claims presented in this cause of action are subject to dismissal

26

as Plaintiff failed to properly exhaust an administrative remedy available to him which is a precondition to proceeding in this court on his claims. *Ngo*, 548 U.S. at 87-94, 126 S.Ct. at 2384-2388.

Griffith is no longer incarcerated at the Kilby Correctional Facility. Thus, the administrative remedy provided by the medical defendants at that facility is no longer available to Griffith. Under such circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Keirk*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (Inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable and no special circumstances justified the failure to exhaust.).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants Dulaney's and Everette's motion for summary judgment (*Doc. No. 45*) be GRANTED  to the extent these Defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust  administrative remedies previously available to him at the Kilby Correctional Facility;

2.  Plaintiff's claims for injunctive and/or declaratory relief be DISMISSED as moot;

3.  Defendants Anderson's and Peterson's motion for summary judgment on Plaintiff's § 1983 excessive force and deliberate indifference claims (*Doc. No. 14*) be DENIED;

4.  Defendant Anderson's motion for summary judgment on Plaintiff's supplemental state law claim for assault and battery (*Doc. No. 14*) be DENIED;

5.  Defendant Peterson's motion for summary judgment on Plaintiff's supplemental state law claim for conspiracy to commit assault and battery (*Doc. No. 14*) be DENIED

6.  Defendant Peterson's motion for summary judgment on Plaintiff's supplemental state law claim for contributory negligence (*Doc. No. 14*) be GRANTED; and

7.  Plaintiff's § 1983 excessive force and deliberate indifference claims and supplemental state law claims for assault and battery against Defendant Anderson, and Plaintiff's § 1983 excessive force and deliberate indifference claims and supplemental state law claim for conspiracy to commit assault and battery against Defendant Peterson be SET for trial by jury.

It is further

ORDERED that on or before **March 3, 2010** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

28

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 17th day of February 2010.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE